**Anthony Alexander CAMPBELL, Petitioner–Appellant,**

v.

**Bert RICE, Warden, Respondent–Appellee.**

**No. 99–17311.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 2001.

Filed Sept. 12, 2001.

Withdrawn and Filed Sept. 4, 2002.*

2001, pending the Supreme Court's decision in *Mickens v. Taylor*, —— U.S. ——, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). We now withdraw our prior opinion and file this opinion.

Walter F. Brown, Jr., Gray, Cary, Ware & Freidenrich, San Francisco, CA, for the petitioner-appellant.

John R. Vance, Jr., Deputy Attorney General, San Francisco, CA, for the respondent-appellee.

Before PREGERSON, FERGUSON, and HAWKINS, Circuit Judges.

## ORDER

The opinion filed on September 12, 2001, and appearing at 265 F.3d 878 (9th Cir. 2001), is hereby withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit.

The petition for rehearing is GRANTED. An opinion will be filed contemporaneously with this order.

## OPINION

PREGERSON, Circuit Judge.

Anthony Alexander Campbell ("Campbell") appeals from the denial of his 28 U.S.C. § 2254 habeas petition. In his petition, Campbell challenges the constitutionality of his state court convictions for eighteen counts of first-degree burglary and one count of attempted burglary on the grounds that he was deprived of the effective assistance of counsel and due process. Campbell asserts that, at the time of his trial, defense counsel suffered from a conflict of interest because she was facing her own criminal prosecution on a felony drug charge by the same district attorney's office. Campbell additionally asserts that his due process rights were violated when he was excluded from the private in-chambers hearing ("in-chambers hearing") involving the trial court, defense counsel, and the prosecutor, at which the trial court considered, on the record, defense counsel's potential conflict of interest as disclosed by the prosecutor.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We conclude that Campbell's due process right to be present at the in-chambers hearing was violated, and that this violation was a structural error that was prejudicial per se. We therefore reverse the district court's denial of Campbell's habeas petition and remand with instructions to grant the writ.

## I.

### FACTS and PROCEDURAL HISTORY

On May 26, 1995, Linda Scharback looked out her window and saw a man trying to open the door to her house. Scharback recognized the man from a composite picture of a burglary suspect

that had been circulated in her neighborhood. She called 911. When police officers arrived at Scharback's home, they found Campbell in the backyard and arrested him. Following the arrest, the officers obtained Campbell's consent to search his car. The search revealed several pieces of jewelry and a briefcase that contained more jewelry and other personal property.

The police subsequently obtained Campbell's wife's consent to search their home. During the search of the Campbells' apartment, the police recovered 239 items, which were later found to belong to various people who had reported those items missing after their homes were burglarized.

The Santa Clara County District Attorney's Office charged Campbell with multiple counts of first-degree burglary, in violation of California Penal Code §§ 459 and 460, and several counts of attempted burglary, in violation of California Penal Code §§ 459 and 664. Campbell retained Maureen McCann ("McCann") as defense counsel. McCann represented Campbell at his preliminary hearing on December 4, 1995, after which Campbell was held over for trial. The trial was scheduled to begin on February 8, 1996.

On January 9, 1996, one month before Campbell's trial date, McCann herself was arrested for attempting to transport methamphetamine into the San Martin Criminal Court Justice Facility in Santa Clara County. The Santa Clara County District Attorney's Office charged McCann with one count of felony possession of methamphetamine.

On February 6, 1996, two days before Campbell's trial was scheduled to begin, McCann was arraigned in the Santa Clara County Superior Court on the methamphetamine possession charge. The Santa Clara County District Attorney's Office prosecuted McCann throughout the course of Campbell's trial.[1]

On February 8, 1996, the first day of Campbell's trial, the court met in-chambers with McCann and Santa Clara County Deputy District Attorney Ralph Dixon, who was prosecuting Campbell. Campbell was neither present at the in-chambers hearing nor was he informed of it. The trial judge explained that the hearing was taking place because "Mr. Dixon has something he wishes to put on the record with respect to Ms. McCann."

Dixon then informed the trial judge that the Santa Clara County District Attorney's Office was prosecuting McCann on unspecified charges. Dixon noted that Campbell had a constitutional right to a conflict-free attorney. He stated that his office had made McCann an offer regarding her own criminal prosecution that was "neither more lenient nor more severe than that any other defendant would be offered if they were eligible" and that "she has not nor will she receive favorable treatment from our office for any reason."

The following conversation then took place:

THE COURT: Do you wish to make any statement at this time, Ms. McCann?

MS. McCANN: No, that's fine.

THE COURT: Very well.

---

1. On March 15, 1996, approximately three weeks after Campbell was convicted, McCann's preliminary hearing was held in Santa Clara County Municipal Court. At the hearing, the deputy district attorney informed the court that, although his office had originally offered McCann diversion, he was re-

voking the offer because McCann was "not eligible for diversion." McCann's lawyer then explained that McCann had been on probation in San Diego for another offense, and that her probation had been revoked for "possibly failing to finish a drinking and driving program some six years ago."

MR. DIXON: And the Court has determined that this is sufficient.

THE COURT: The Court has determined there is no conflict of interest with respect to Ms. McCann as against her relationship with the district attorney in this case of *People v. Campbell.*

MR. DIXON: Thank you, Your Honor.

THE COURT: Thank you.

The conference ended at this point, and the trial went forward.

On February 23, 1996, the jury found Campbell guilty of eighteen counts of first-degree burglary and one count of attempted burglary. Approximately one month later, the trial judge sentenced Campbell to an aggregate term of fourteen years in prison. On January 7, 1997, Campbell filed his direct appeal with the California Court of Appeal for the Sixth Appellate District. On August 9, 1997, Campbell filed a state habeas petition in the same court. The California Court of Appeal denied Campbell's direct appeal and his state habeas petition in an unpublished decision on December 15, 1997. Campbell appealed to the California Supreme Court, which denied review of both matters on April 1, 1998.

Campbell filed a § 2254 habeas petition in the United States District Court for the Northern District of California on August 25, 1998. The petition was denied on September 24, 1999. Campbell timely appeals.

## II.

## ANALYSIS

■ We review de novo the district court's denial of a § 2254 petition. *See Hoffman v. Arave,* 236 F.3d 523, 529 (9th Cir.2001). Because Campbell's habeas petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AED-

PA"), we cannot grant his petition unless the state court's adjudication of his claims:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law if the state court "failed to apply the correct controlling authority from the Supreme Court." *Shackleford v. Hubbard,* 234 F.3d 1072, 1077 (9th Cir. 2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001); *see also Williams v. Taylor,* 529 U.S. 362, 405–07, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision—in this case, the California Court of Appeal's December 15, 1997 unpublished opinion—as the basis for its judgment. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Shackleford,* 234 F.3d at 1079 n. 2.

To establish that a state court decision has unreasonably applied federal law, "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied [federal law] incorrectly." *Bell v. Cone,* —— U.S. ——, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002). Rather, to warrant habeas relief, the defendant must show that the state court applied federal law to the facts of his case in an "objectively unreasonable manner." *Id.*

### A. Conflict of Interest Claim

■ "Where a constitutional right to counsel exists,[the Supreme Court's] Sixth

Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). When a trial court is made aware of an attorney's actual or potential conflict of interest, Supreme Court precedent requires that the trial court "either appoint separate counsel or . . . take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Holloway v. Arkansas,* 435 U.S. 475, 484, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). The trial court's failure to appoint separate counsel or inquire into the attorney's potential conflict of interest amounts to a violation of the defendant's Sixth Amendment rights. *See id.*

Campbell has established that the trial court knew that a potential conflict of interest existed. Based on the representations of the prosecutor at the in-chambers hearing, the trial court knew that defense counsel McCann was being prosecuted by the same district attorney's office that was prosecuting Campbell. Campbell has also shown that the trial court neglected its duty to appoint separate counsel or inquire further into the nature of the conflict. The trial judge did not ask McCann any questions concerning her ability to represent Campbell effectively while engaging in plea negotiations on her own behalf and facing the possibility of prosecution by the district attorney. The only question that the court asked McCann was whether she "wish[ed] to make any statement at this time." When McCann declined to make a statement, the trial judge terminated the inquiry.

█ Even though the trial court knew of a potential conflict of interest and failed to make an inquiry, however, Campbell cannot obtain relief unless he can show that his attorney's conflict of interest "adversely affected" her performance. *Mickens v. Taylor,* —— U.S. ——, 122 S.Ct.

1237, 1245, 152 L.Ed.2d 291 (2002). Campbell argues that defense counsel McCann's conflict of interest adversely affected her representation of Campbell because she failed to aggressively defend Campbell in order to curry favor with the district attorney's office. Specifically, Campbell argues that McCann's conflict resulted in her failure to: (1) challenge the admissibility of DNA evidence without a hearing; and (2) oppose the prosecutor's motion to preclude Campbell from referencing other burglaries that occurred in the same geographical area as the burglaries Campbell was charged with committing.

The California Court of Appeal concluded that McCann's potential conflict of interest did not adversely affect her representation. The California Court of Appeal specifically rejected the two examples of adverse effects raised by Campbell. The court wrote that "[t]here is no indication on the record on appeal or from Campbell's habeas corpus petition that any challenge to the admissibility of the DNA evidence would have been successful." The court also noted that because the DNA testing procedure used in this case was subsequently approved of, "it is difficult to imagine that Campbell's representation suffered any adverse effect from his counsel's failure to insist upon a . . . hearing." Regarding McCann's willingness not to mention other burglaries that occurred in the same geographical area as the burglaries Campbell was charged with committing, the California Court of Appeal held that "[d]efense counsel was entitled to conclude that on balance, evidence of other crimes in the same area would not be helpful in Campbell's defense."

█ Campbell has not shown that the California Court of Appeal's analysis of the potential adverse effect of these actions was an "objectively unreasonable" applica-

tion of Supreme Court law. *Bell*, 122 S.Ct. at 1852. We therefore affirm the district court's denial of the writ on Campbell's conflict of interest claim.

## B. Due Process Claim

■ The Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). If a defendant is denied his constitutional right to be present during a critical stage of criminal proceedings, Supreme Court precedent requires us to evaluate the nature of the error. Reversal is automatic if the defendant's absence constitutes a "structural error," that is, an error that permeates "[t]he entire conduct of the trial from beginning to end," or "affect[s] the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In contrast, we must conduct a harmless error review if the defendant's absence constitutes a "trial error," that is, an error which "occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. 1246.

In its denial of Campbell's petition, the California Court of Appeal cited a California state court case in support of the proposition that, "[a]s a general rule ... the accused is not entitled to be personally present during proceedings which bear no reasonable, substantial relation to his opportunity to defend the charges against him, and the burden is upon defendant to demonstrate that his absence prejudiced his case or denied him a fair and impartial trial." The Court of Appeal assumed ar-

guendo "that the court erred in discussing the [conflict of interest] matter in Campbell's absence," but denied Campbell relief because "Campbell's representation was not adversely affected, and Campbell was not denied a fair and impartial trial."

■ The California Court of Appeal's decision was "contrary to" Supreme Court law for two reasons. 28 U.S.C. § 2254(d)(1). First, the California Court of Appeal failed to cite any federal law, much less the Supreme Court precedents applicable to this case. Second, the court failed to evaluate whether Campbell's absence from the conference constituted a structural or trial error—and, thus, failed to consider whether the error was subject to automatic reversal or harmless error review—as is required by the Supreme Court's decision in *Fulminante*. Because the California Court of Appeal failed to apply the governing precedent, and because its prejudice analysis directly contradicted Supreme Court precedent, its decision is contrary to clearly established federal law.

To the extent that the California Court of Appeal implicitly engaged in the *Fulminante* analysis, we conclude that its characterization of Campbell's exclusion from the conference as a "trial error," and not a "structural error," was an objectively unreasonable application of clearly established federal law for the reasons that follow.

■ Having reviewed the governing Supreme Court precedents, and the facts of this case, we conclude that Campbell's due process rights were violated when he was excluded from the in-chambers hearing in which defense counsel, the prosecutor, and the judge discussed the conflict of interest raised by the felony prosecution of defense counsel by the same district attorney's office that was prosecuting Campbell. As the Supreme Court has held, if defense

counsel's representation is hampered by a conflict of interest, the integrity of the adversary system is cast into doubt because counsel cannot "play[ ] the role necessary to ensure that the trial is fair." *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Given that the right to conflict-free counsel must be preserved in order to "ensure that the trial is fair," *id.,* the in-chambers hearing held to determine whether Campbell's right to conflict-free counsel had been violated must have been a critical stage of the criminal proceedings.

It is also clear that Campbell's presence at the in-chambers hearing "would [have] contribute[d] to the fairness of the procedure." *Stincer,* 482 U.S. at 745, 107 S.Ct. 2658. No one was representing Campbell's interests at this critical hearing, during which the trial judge considered whether defense counsel McCann could zealously defend Campbell against the same district attorney's office that was prosecuting her. If Campbell had been present at this conference, or had the trial court appointed another attorney to represent Campbell during this conference, Campbell or his appointed counsel could have asked questions to more fully flush out the nature of McCann's conflict. Because Campbell was never informed of the conflict, Campbell could neither assert his objections to McCann's continued representation or waive his right to conflict-free counsel. Accordingly, we conclude that Campbell's due process right to be present at the conference was violated.

Having found that Campbell was improperly excluded from the in-chambers hearing, we must determine whether Campbell's constitutional deprivation fits within the class of cases in which prejudice must be presumed. We have held that "a defendant's absence from certain stages of a criminal proceeding may so undermine the integrity of the trial process that the error will necessarily fall within that category of cases requiring automatic reversal." *Hegler v. Borg,* 50 F.3d 1472, 1476 (9th Cir.1995). To merit a finding of structural error, a defendant must have been excluded from a stage of the criminal proceedings at which he had an "active role to play." *Rice v. Wood,* 77 F.3d 1138, 1141 (9th Cir.1996) (en banc); *see also Hegler,* 50 F.3d at 1476–77 (holding that the "determinative factor" as to whether the defendant's absence constituted a structural error was whether the defendant's ability to "influence the process was negligible"). In addition, the erroneous exclusion of the defendant must, "like the denial of an impartial judge or the assistance of counsel, affect the trial from beginning to end." *Rice,* 77 F.3d at 1141.

We find that Campbell's exclusion from the in-chambers hearing amounts to a structural error because Campbell would have been able to "influence the process" in a significant way had he been present at the hearing. *Hegler,* 50 F.3d at 1477. McCann, Campbell's only representative at the in-chambers hearing, could not adequately represent Campbell's interest in conflict-free counsel because *she* was the subject of the hearing. As a result, Campbell's constitutional right to conflict-free counsel received no consideration beyond the judge's one question to defense counsel and the one word response that the judge received. Had Campbell been informed of McCann's potential conflict, and were he or a court-appointed representative present at the in-chambers hearing, Campbell or his representative could have asked the judge to expand his inquiry into the potential conflict. Just as the denial of the assistance of counsel affects the integrity of an entire trial, Campbell's exclusion from this critical in-chambers hearing at which his counsel's potential conflict of interest was evaluated "affect[ed] the trial

from beginning to end." *Rice*, 77 F.3d at 1141.

Accordingly, we conclude that Campbell's exclusion from the conference at which the trial court considered defense counsel's conflict of interest violated his due process right to be present at a critical stage of the criminal proceedings because his presence "would [have] contribute[d] to the fairness of the procedure." *Stincer*, 482 U.S. at 745, 107 S.Ct. 2658. We also conclude that Campbell's absence from this conference amounted to a structural error, mandating a finding of prejudice per se, because Campbell had an "active role to play" in the in-chambers hearing and because his exclusion from the hearing compromised the integrity of the entire trial. *Rice*, 77 F.3d at 1141.

## CONCLUSION

We hold that Campbell's due process rights were violated when he was excluded from the in-chambers hearing during which defense counsel's potential conflict of interest was discussed, and reverse the district court's denial of Campbell's habeas petition on this ground. We affirm the district court's decision in all other respects. We remand this matter to the district court with instructions to grant the writ as to Campbell's due process claim, and require the state of California to bring Campbell to trial again within a reasonable amount of time or dismiss the case against Campbell and release him from custody. Each side to bear its own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.