**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Silvestre ESPARZA–SERRANO,**
**Defendant–Appellant.**

No. 01–50436.

D.C. No. CR–99–00124–AHS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2003.

Decided Nov. 10, 2003.

Miriam A. Krinsky, AUSA, Andrea L. Russi, Esq., Fred A. Rowley, Jr., Esq., USLA–Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Robison D. Harley, Jr., Aty., Silvestre Esparza Serrano, pro se, Santa Ana, CA, for Defendant–Appellant.

Before PREGERSON, THOMAS, Circuit Judges, and OBERDORFER,* Senior District Judge.

---

* The Honorable Louis F. Oberdorfer, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

## MEMORANDUM**

Silvestre Esparza–Serrano appeals his conviction for distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Serrano was convicted and sentenced after he entered a plea of guilty. He now seeks to withdraw his guilty plea on the ground that his counsel at the time he entered his guilty plea was operating under a conflict of interest, that he subsequently alerted the district court to this conflict, but that the district court failed to fulfill its duty to inquire into the conflict. We have jurisdiction pursuant to 28 U.S.C. § 1291. Serrano is not entitled to the automatic reversal of his conviction that he seeks, but he is entitled to a remand so that the district court can conduct an appropriate inquiry into the alleged conflict of interest and, in light of that inquiry, decide whether he should be allowed to withdraw his guilty plea. Accordingly, we remand.

## I. BACKGROUND

In April 2000, Serrano entered a plea of guilty to one count of distribution of methampetamine. At the time he entered his plea, he was represented by retained counsel, Lawrence Merryman. As recited in the plea agreeement, Serrano faced a statutory mandatory minimum of ten years imprisonment and a statutory maximum of life imprisonment. In terms of the sentencing guidelines, the plea agreement provided that Serrano's base offense level would be 36, but that if he cooperated with the government, at a minimum the government would recommend a two or three-level reduction in his offense level for acceptance of responsibility and, if warranted, would also move for a downward departure for substantial assistance.

Ten months later, on February 2, 2001, Serrano sent a letter to the district court claiming that he had neither seen nor heard from Merryman since he entered his guilty plea in April 2000. Serrano claimed that Merryman had "abandoned" him, forcing him to ask the district court directly that he be "sentenced forthwith so that I can have somewhat of finality to this predicament that I have created for the system and for myself." Serrano followed up this letter with a petition, dated March 20, 2001, asking the district court to relieve Merryman and appoint for him new counsel. In his petition, Serrano claimed that he and Merryman had a "conflict of interest and strategy along with other factors detrimental to [Serrano's] defense." Serrano also claimed that: "Mr. Merryman never show any interest on the case, so needless to say that is a conflict between attorney and client."

On April 2, 2001, the parties appeared before the district court for sentencing. When asked by the court about Serrano's petition for new counsel, Merryman responded:

I have just talked to the defendant with reference to his motion to have me relieved as counsel. And I believe from those discussions, I believe it will be necessary to have me withdraw as counsel.

Essentially, I believe asking to withdraw his plea—or at least, he's claiming that I misinformed him as to the time that he would have to serve, and that he didn't—that he signed the plea agreement based upon that.

And that's not my recollection of the circumstances, but I think between that and some other difficulties, including the length of time that this matter has been

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

pending, I think it would be better if I did withdraw.

There has been difficulties right along between us, and I think it's now gone to the point where he's lost trust in me. And I don's think I can represent him adequately any further.

Serrano told the court:

What I do not agree with is that the gentleman changed the sentence that I was told I was going to get. So I don't feel comfortable with him.

And on top of that, for a whole year he abandoned me. He never told me that I was supposed to come to court or anything like that. He never gave me any documents. I don't have any papers from the Court.

And that is the reason.

Without any further inquiry into the alleged conflict of interest or its possible effect on prior proceedings, the district court ordered that new counsel be appointed and postponed sentencing until May 14, 2001.

On April 15, 2001, Serrano sent a letter to the district court, stating:

I would first like to thank you for appointing new counsel to represent me. The counsel previous to (Mr. M[e]rryman, Esq.) did not consult with me and in effect goaded me, under duress to state matters and sign declarations that stated that I undertook acts, which I had not. He was hired by my co-defendant, and therefore I suspect Mr. M[e]rryman did not have my best interests at heart: I guess it is for the foresaid reasons and the Courts understanding of them that you invalidated my guilty plea to the Court.

My purpose in writing this letter to you is to address and bring to the Courts attention, a declaration [1] that I signed at the urging of Mr. M[e]rryman, that stated facts that I had not undertaken. I signed said declaration under duress. This declaration was signed on or about May 2000. I ask that the Court strike said declaration from the record.

On May 1, 2001, Serrano sent a second letter to the district court, asking if the first letter had been received and attaching another copy. On May 8, 2001, the district court ordered both letters to be filed and served.

On May 14, 2001, the parties again appeared for sentencing. Serrano's new counsel, Hector Perez, told the district court that the sentencing might need to be postponed because "[t]here is a letter that came in within the last week that needs to be clarified before sentencing proceeds, Your Honor. And I'm hopeful that I can clarify it with my client if I spend time reviewing some matters with him." The district court responded, "[s]ince I'm not aware of what letter that is, can you just give me an indication as to how much time you think you need to resolve this?" Perez asked for a continuance until June 11, 2001, explaining "The issue is in the letter. Mr. Esparza indicates that the prior attorney was hired by the codefendant, and I want to address that matter, Your Honor. And I just got this letter late last week, Your Honor." The district court granted the continuance.

On July 9, 2001, Serrano was sentenced. After an offense-level reduction for acceptance of responsibility and a substantial assistance departure, *inter alia*, the district court determined that Serrano's of-

---

**1.** It is not clear from the record whether this "declaration" is the plea agreement or some

other unidentified document.

fense level was 29, his criminal history category was IV, and his guidelines sentencing range was 121–151 months. The district court sentenced Serrano to 121 months imprisonment. Serrano appeals his conviction.

## II. DISCUSSION

On appeal, Serrano contends that he was deprived of his right to conflict-free representation at the time he entered his guilty plea, that the district court failed to inquire into the nature of Merryman's conflict, and, accordingly, he should be allowed to withdraw his guilty plea.

A trial court has a duty to inquire into a potential conflict of interest when it "knows or reasonably should know that a particular conflict [of interest] exists." *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *see also Garcia v. Bunnell,* 33 F.3d 1193, 1999 (9th Cir.1994), *cert. denied,* 514 U.S. 1024, 115 S.Ct. 1374, 131 L.Ed.2d 229 (1995). The district court here either knew or reasonably should have known of Merryman's potential conflict of interest because of Serrano's written communications to the district court in the spring of 2001, Merryman's and Serrano's in-court statements when Merryman was removed as counsel, and Serrano's new attorney's request for a continuance to investigate any possible conflict. Having been put on notice, the district court had a duty to inquire into Merryman's potential conflict of interest. The record establishes that it failed to fulfill this duty. At the April 2, 2001 hearing, the district court removed Merryman as counsel without ever addressing the alleged conflict of interest or or what its

impact might have been on the plea proceedings. On May 14, 2001, it postponed sentencing to give Serrano's new attorney, Perez, time to consider the issues raised by Serrano's April 15, 2001 letter, which Perez described as a conflict issue. When next in court, for sentencing on July 9, 2001, the only conversation the court had with Serrano's new attorney was to ask him if there was anything else he wished to raise. After receiving a negative answer, the court proceeded to sentence Serrano. The government argues that the district court met its obligations by giving new counsel time to raise the conflict issue and then, after new counsel did not pursue it, proceeding. However, it is the trial court's duty to inquire that is at issue, and its actions do not appear to have satisfied this duty.

The district court's failure to inquire into Merryman's potential conflict of interest, however, does not entitle Serrano to the automatic reversal of his conviction. *See Mickens v. Taylor,* 535 U.S. 162, 168, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (explaining *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). That extraordinary relief is reserved for cases where defense counsel is improperly required, after a timely objection, to represent co-defendants.[2] *Id.* As there is no allegation that Merryman was improperly forced to represent co-defendants over a timely objection, Serrano is not entitled to automatic reversal.

As the district court's failure to inquire into the Merryman's alleged conflict of interest does not entitle Serrano to automatic reversal, the next question is whether Merryman did, in fact, have a conflict of

---

**2.** Prior to the Supreme Court's decision in *Mickens,* the Ninth Circuit had held that if a court was on notice of a potential conflict, and failed to conduct the necessary inquiry into the alleged conflict, the defendant was

entitled to the automatic reversal of his conviction. *See Campbell v. Rice,* 265 F.3d 878, 884, 889–90 (2001), *withdrawn and superceded by* 302 F.3d 892 (2002).

interest and, if so, the nature of that conflict. The record as it stands does not permit the resolution of this issue on appeal. Accordingly, we remand[3] the case to the district court for it to determine whether Merryman had a conflict of interest and, if so, the nature of his conflict. If the district court concludes that Merryman had a conflict, it can then proceed to the question of whether, as a result of that conflict, Serrano was deprived of the effective assistance of counsel at the time he entered his guilty plea.

In making this decision, the district court will have to choose between two possible standards for evaluating ineffective assistance of counsel claims based on conflicts of interest. *Compare Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (general rule is that a defendant bringing an ineffective assistance of counsel claim must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") *with Cuyler*, 446 U.S. at 348–49 (in an exception to *Strickland*, a defendant bringing an ineffective assistance claim based on a joint representation conflict of interest must only demonstrate that an "actual conflict of interest adversely affected his lawyer's performance"). Historically, courts, particularly this one, have applied the *Cuyler* test to conflicts other than joint representation. *See, e.g., Summerlin v. Stewart*, 267 F.3d 926, 935–941 (9th Cir.2001) (defense counsel romantically involved with the prosecutor), *opinion withdrawn by* 281 F.3d 836 (9th Cir.), *reh'g en banc granted*, 310 F.3d 1221 (9th Cir.2002); *Garcia*, 33 F.3d at 1194–1195, 1198 n. 4 (9th Cir.1994) (defense counsel had plan to work for prosecutor's office at the conclusion of defendant's trial), *cert. denied*, 514

U.S. 1024, 115 S.Ct. 1374, 131 L.Ed.2d 229 (1995); *United States v. Hearst*, 638 F.2d 1190, 1193 (9th Cir.1980) (defense counsel had book contract to write about defendant's case), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *see also Riggs v. United States*, 209 F.3d 828, 831 n. 1 (6th Cir.) (*Cuyler* applies to all conflict of interest claims), *cert. denied*, 531 U.S. 884, 121 S.Ct. 200, 148 L.Ed.2d 140 (2000); *United States v. Sayan*, 968 F.2d 55, 64–65 (D.C.Cir.1992) (defense counsel failed to request continuance for fear of antagonizing the trial judge); *United States v. Michaud*, 925 F.2d 37, 40–42 (1st Cir.1991) (defense counsel was teaching classes to IRS agents in case where government witness was IRS agent).

The Supreme Court has recently questioned the broad application of *Cuyler*, opining in *dicta* in *Mickens* that "[i]t must be said, however, that the language of *Sullivan [Cuyler]* itself does not clearly establish, or indeed even support, such expansive application," *Mickens*, 122 S.Ct. at 1245, but it did not overrule any of the decisions applying *Cuyler* to conflicts other than joint representation. Since *Mickens*, some courts, including the Ninth Circuit, have continued to apply *Cuyler* to other types of conflicts. *See, e.g, Campbell v. Rice*, 302 F.3d 892, 896–97 (9th Cir.2002) (in § 2254 case, applying *Cuyler* test where defense counsel and defendant were simultaneously being prosecuted by the same prosecutor's office); *see also United States v. Blount*, 291 F.3d 201, 212 (2d Cir.2002) (on direct appeal, applying *Cuyler* test where government witness has been represented in an unrelated proceeding by another member of defense counsel's law firm), *cert. denied sub nom. Streater v. United States*, 537 U.S. 1141, 123 S.Ct. 938, 154 L.Ed.2d 838 (2003);

---

**3.** We see no reason to further delay an assessment of the alleged conflict of interest by

deferring the matter to the stayed § 2255 motion.

*Moss v. United States*, 323 F.3d 445, 462–63 (6th Cir.2003) (in § 2255 case, applying *Cuyler* test where defense counsel had represented a co-defendant in an earlier stage of the same case, which the court considered "outside of the traditional class of successive representation cases"), *cert. denied*, —— U.S. ——, 124 S.Ct. 303, 157 L.Ed.2d 144 (2003); *United States v. Young*, 315 F.3d 911, 914 n. 5 (8th Cir.) (*Cuyler* applies to alleged conflicts involving multiple or serial representation while *Strickland* applies to all other types of conflicts), *cert. denied*, —— U.S. ——, 123 S.Ct. 2108, 155 L.Ed.2d 1081 (2003). *But see, e.g., Smith v. Hofbauer*, 312 F.3d 809 (6th Cir.2002) (in § 2254 case, state court's failure to apply *Cuyler* test to simultaneous prosecution conflict was not contrary to "clearly established Federal law, as determined by the Supreme Court") (Oberdorfer, J., concurring in part and dissenting in part). Without knowing whether Merryman had a conflict of interest, or the nature of that conflict, we are not in a position to decide whether the *Cuyler* or *Strickland* analysis should apply.

Accordingly, we remand the district court to allow it to conduct an appropriate inquiry into the alleged conflict of interest and, if it finds there was a conflict, to decide, applying either the *Cuyler* or *Strickland* analysis, whether Serrano was denied effective assistance of counsel and should be permitted to withdraw his guilty plea.

REMANDED.

THOMAS, Circuit Judge, dissenting.

I agree with the majority's thorough and excellent legal analysis of the trial court's duty to inquire into a potential conflict of interest when it knows or reasonably should know that a particular conflict of interest exists. I also agree with the majority that even if the district court failed to properly inquire into counsel's conflict of interest in this case, automatic reversal is not required.

However, under the specific facts of this case, I cannot fault the district court's discharge of its duty of inquiry. In response to Serrano's initial letters alleging that counsel had "abandoned" him and asking for appointment of new counsel, the district court questioned Merryman at the April 2, 2001, hearing, appointed new counsel, and postponed sentencing. After receiving Serrano's letter alleging that Merryman, now no longer Serrano's counsel, had improperly represented a co-defendant at the time Serrano's plea was entered, the district court granted a continuance at the request of Serrano's new counsel, Mr. Perez, in order to permit counsel to address the alleged conflict of interest. At the final sentencing hearing on July 9, 2001 the district court began by noting that "the matter has been continued for reasons which the parties are aware," referring to the conflict of interest investigation undertaken by counsel at the previous hearing. The court then asked to hear from defense counsel, and asked if there were any legal cause why sentence should not be pronounced. Defense counsel replied that there was not. Accordingly, the district court then imposed a sentence of 121 months, just one month more than the statutory mandatory minimum and 30 months less than the lowest downward departure requested by the government.

Although the trial court has a duty of inquiry when it knows or reasonably should know that a particular conflict exists, "trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel" to determine whether a conflict exists and whether it will hinder the representation. *Cuyler v.*

*Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Given that *Cuyler* approves a trial court's reliance on defense counsel's inquiry into his or her *own* potential conflict of interest, the court's reliance in this case on new counsel's investigation was not unreasonable; Perez asserted that he would investigate the conflict issue raised by Serrano's letter and later assured the court that there were no further problems or legal impediments to sentencing.

Further, when the district court has a duty to inquire into a potential conflict of interest, it must "either appoint separate counsel or take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Campbell v. Rice,* 302 F.3d 892, 897 (9th Cir.2002) (quoting *Holloway v. Arkansas,* 435 U.S. 475, 484, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). Therefore, the remedy for an alleged conflict of interest is the appointment of new counsel. Here, the district court inquired into Serrano's reasons for requesting new counsel when Serrano first mentioned a "conflict of interest" in his initial letter, and had already appointed new counsel when the alleged multiple representation was brought to its attention. Thus, even if the district court's duty of inquiry could not be discharged by delegating the investigation to counsel, Serrano had already received the remedy for any alleged conflict. Accordingly, I would affirm the sentence imposed by the district court.