**Mr. Eric EL, Petitioner,**

v.

**A.A. LAMARQUE, et al., Respondents.**

**No. CV 03–2242–LGB(RC).**

United States District Court,
C.D. California.

Nov. 20, 2003.

Eric El, Soledad, CA, pro se.

Corey J. Robins, Deputy Attorney General, Los Angeles, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

BAIRD, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Lourdes G. Baird, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On August 20, 2001, in Los Angeles County Superior Court case no. BA209370, a jury convicted petitioner Eric El of one count of second-degree murder in violation of California Penal Code ("P.C.") § 187(a)(count 1) and one count of possession of cocaine base for sale in violation of California Health & Safety Code ("H.S.C.") § 11351.5 (count 2), and, as to the murder, the jury found petitioner personally used a firearm within the meaning of P.C. §§ 1203.06(a)(1), 12022.5(a)(1). Clerk's Transcript ("CT") 325–38; Reporter's Transcript ("RT") 462:22–466:8.[1] Petitioner was sentenced to 40 years to life on the murder, and the upper term of five years on count 2 was stayed. CT 349–52; RT 478:15–480:13.

Petitioner appealed his convictions to the California Court of Appeal, which affirmed the judgment in a published opinion filed October 9, 2002. *People v. El*, 102 Cal.App.4th 1047, 126 Cal.Rptr.2d 88 (2002).

Petitioner then sought review in the California Supreme Court, which denied review on January 15, 2003. Motion to Dismiss ("Motion"), Exhs. C–D.

### II

The California Court of Appeal, in affirming petitioner's judgment and denying the claims made herein, made the following factual findings:

> [Petitioner] Eric El shot and killed Jeffrey L. Clay in a quarrel over the quality of the cocaine [petitioner] was selling. The People charged [petitioner] with first-degree murder and possession of cocaine base for sale. The People also specially alleged [petitioner] personally used a handgun to kill Clay. Following [petitioner's] not guilty plea, the court granted [petitioner's] request to represent himself, but also elected to appoint stand-by counsel to observe the proceedings. [¶] On August 16, 2001, during the People's opening argument, [petitioner] repeatedly interrupted the prosecutor with objections that the court invariably overruled. After overruling at least 22 such objections made in the time it takes to generate only five pages of a reporter's transcript, the court excused the jury. Outside the jury's presence, the court warned [petitioner] not to interrupt with spurious objections, and told him if he continued making groundless objections, the bailiff would remove him from the courtroom. The court called the jury back, at which point [petitioner] resumed making his objections. Excusing the jury a second time, the court ordered [petitioner's] removal from the courtroom for the rest of the prosecutor's opening argument. Although the court had previously appointed stand-by counsel and the minute order for August 16 notes that the attorney was present, the record does not show that the court directed the lawyer to represent [petitioner] after his ejection from the proceedings. On the contrary, the reporter's transcript contains no reference to any discussion between court and counsel or that the court appointed the attorney as counsel of record. Thus, it appears [petitioner] was unrepresented while the prosecutor completed her opening argument. After the prosecutor finished, the court allowed [petitioner] to return, at which time he made his closing argument without incident.

*El*, 102 Cal.App.4th at 1049, 126 Cal. Rptr.2d at 89–90 (citations omitted).

---

**1.** Petitioner was charged in an amended information filed August 9, 2001, with one count of willful, deliberate, premeditated murder, with enhancements, and one count of possession for sale of cocaine base. CT 77–80.

## III

On April 1, 2003, petitioner, proceeding pro se and in forma pauperis, filed the pending petition for habeas corpus challenging his convictions on the following grounds: Petitioner's First, Fifth, Sixth and Fourteenth Amendment rights were violated when he was removed from the courtroom during opening argument. On April 18, 2003, respondent filed a motion to dismiss, arguing the petition is a "mixed" petition containing the unexhausted claim that petitioner's First Amendment rights were violated by the trial court. Petitioner did not file an opposition.

On May 27 and July 9, 2003, this Court issued Orders finding the pending habeas corpus petition to be a "mixed" petition containing, in part, the unexhausted First Amendment claim, and offering to dismiss the petition without prejudice unless petitioner moved to strike or dismiss the unexhausted First Amendment claim and to proceed only on the exhausted claims, as required by *James v. Pliler,* 269 F.3d 1124 (9th Cir.2001), or requested to stay the amended petition. On July 18, 2003, petitioner requested the Court strike his First Amendment claim, and the Court then granted petitioner's request, denied the motion to dismiss as moot and ordered respondent to file an answer. On August 7, 2003, respondent filed his answer or return to the amended habeas petition. On September 8, 2003, petitioner filed his traverse.

## DISCUSSION

### IV

Petitioner's claims must be considered in light of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), which worked substantial changes to the law of habeas corpus. *Moore v. Calderon,* 108 F.3d 261, 263 (9th Cir.), *cert. denied,* 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Of specific importance to the petitioner's claim are the revisions made to 28 U.S.C. § 2254(d), which now provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court is correct, and petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The California Supreme Court denied the petition for review filed by petitioner without written opinion. However, "[w]here there has been one reasoned state judgment rejecting a federal claim, [federal courts are to presume] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). Thus, in addressing petitioner's claims, this Court will consider the reasoning of the California Court of Appeal, which issued a written decision addressing them.

### V

"[A] defendant is guaranteed the right to be present at any stage of the

criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *Campbell v. Rice*, 302 F.3d 892, 898 (9th Cir.2002). "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985)(per curiam) (citation omitted); *Campbell v. Wood*, 18 F.3d 662, 671 (9th Cir.), *cert. denied*, 511 U.S. 1119, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). The due process clause guarantees the defendant the right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge." *Stincer*, 482 U.S. at 745, 107 S.Ct. at 2667 (citations omitted). Thus, "an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819–20 & n. 15, 95 S.Ct. 2525, 2533 & n. 15, 45 L.Ed.2d 562 (1975); *Rushen v. Spain*, 464 U.S. 114, 117, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983).

 A defendant's right to be personally present during trial may, however, be forfeited or waived by his disruptive behavior. *Illinois v. Allen*, 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970); *Badger v. Cardwell*, 587 F.2d 968, 970 (9th Cir.1978). Since "[i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country[,]" *Allen*, 397 U.S. at 341, 90 S.Ct. at 1061, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.* at 343, 90 S.Ct. at 1060–61. "Once lost, the right to present can ... be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.*

 Here, the record is replete with instances in which petitioner acted contumaciously and showed no respect for the legal proceedings or the trial judge.[2] During the trial, petitioner was frequently argumentative, often interrupted the court proceedings, made inflammatory statements about various witnesses[3] and the

---

**2.** Even prior to trial, during the hearing in which petitioner sought to discharge his appointed attorney and to represent himself, petitioner showed no respect for, and repeatedly interrupted, the judge who was presiding over the hearing, referred to her as "Dictator Kwan," threatened to spit in her face, RT B21:15–17, and accused her of treating him unfavorably because of his race. RT B16:11–B37:6. In response, the judge warned petitioner:

I want you to know that should you behave the way you did today in front of a jury, you would have been removed long ago. The

right to ... act ... pro per is not a license to abuse the dignity of the Court. [¶] And should you continue to act the way you've acted, I can guarantee you that you are not likely to be able to sit in your own trial.... RT B33:20–28.

**3.** For instance, petitioner interrupted a police officer's testimony, "interpreting" it for the jury as: "We['re] going to do you like Rodney King if you don't cooperate, that's what he was saying." RT 214:7–11. Similarly, petitioner told a deputy medical examiner with whom he disagreed that: "I think what you are doing is defacing [sic] your practice, put-

trial judge,[4] and interjected many baseless objections, causing the trial judge to admonish petitioner on myriad occasions. *See,* e.g., RT 1:13–3:14, 214:3–216:9, 310–7:11–310–13:26, 310:33:21–22, 310–35:25–310–36:3, 310–44:27–310–46:25, 311:17–315:11, 366:1–376:25, 406:25–407:6.

Finally, matters came to a head during the prosecutor's opening argument, when petitioner repeatedly made unmeritorious objections and unsolicited interjections following practically ever statement the prosecutor made. RT 401:28–418:3. After petitioner's seventh unmeritorious objection, the following exchange occurred:

[The Court]: You'll have a chance to respond, Mr. El.

[Petitioner]: Sure. I'm going to respond with just what I'm doing.

[The Court]: All right, sir. Overruled. . . .

[Prosecutor]: So it becomes essential to think about what was going through Mr. El's head–

[Petitioner]: If it go that far.

[The Court]: Mr. El, don't interrupt again or you will be removed from the court. All right?

[Petitioner]: But you took all my evidence out.

[The Court]: Mr. El, if you're going to continue to make inflammatory statements, you will be taken out of the courtroom. Please don't do it again.

RT 409:21–410:7. Despite the trial judge's warning, petitioner continued his obstreperous behavior. RT 410:8–412:28. Nevertheless, the trial judge attempted to accommodate petitioner by offering him a continuing objection, which petitioner refused. RT 411:23–412:2.

Finally, after 22 meritless objections, the trial judge asked the jury to leave the courtroom, and the following exchange took place:

[The Court]: All right. We are outside the presence of the jury. [¶] Mr. El, I find that what you're doing is deliberately obstructionist and completely inappropriate. No lawyer would be permitted to continue to make spurious objections during the course of opposing counsel's argument. It is clear that you disagree with the People's theory and their explanation–

[Petitioner]: No. I disagree with you violating my rights the way you doing.

[The Court]: Right. [¶] And remember, only one of us can be taken down at one time. [¶] So what I'm about to do, I think, is if you proceed with this, I'm going to have you removed, and you can wait in lockup while [the prosecutor] finishes her closing argument. You have been disruptive and obstreperous, contentious, rude, obnoxious, and confrontational throughout the course of this trial. [The prosecutor]

ting shame on your practice." RT 310–33:21–22. Later, petitioner accused the police, paramedics, coroner and other witnesses of lying and conspiring against him. RT 366:4–5, 372:22–28, 373:19–27, 376:19–25.

4. For example, petitioner complained the trial judge was biased against him, stating: "Your favorite [sic] just then, when you let the District Attorney put evidence, tainted evidence, of an aerial chart in evidence, and then you're discriminating against handwritten evidence that I put up there." RT 367:6–10. Similarly, after an unfavorable ruling, petitioner

compared his case to "Who Framed Roger Rabbit?," RT 315:10–11, and, unhappy with another of the trial judge's rulings, declared: "This remind[s] me of the old Klu Klux Klan Club I went to one time." RT 368:11–12. Additionally, petitioner accused the trial judge and prosecutor of "working as a team" against him, RT 407:5–6, and, following sentencing on September 18, 2001, petitioner's final statement to the court was the comment: "I am going to concentrate on people's blowing up the World Trade Center now." RT 482:11–12.

has shown tremendous professional patience. I have tried to, as well. It's not reciprocated by you, unfortunately. What you're doing, I think, is deliberately trying to disrupt [the prosecutor's] closing argument, and I don't think you're to be permitted to do that. [¶] Now, I've offered you a continuing objection.... So what's it going to be? Are you going to take a continuing objection?

[Petitioner]: No I'm not going to take a continuing objection.

[The Court]: Are you going to continue to interrupt her?

[Petitioner]: No, I'm not.

[The Court]: You're not?

[Petitioner]: Only when it's objection time.

[The Court]: Well, you're interrupting to virtually every statement she makes, and her statements–

[Petitioner]: Okay. I understand.

[The Court]:—are not objectionable.

[Petitioner]: I'm not going to do it no more.

[The Court]: All right. [¶] If you do it again, I'll just have you removed, and you can wait in back until she's finished.

[Petitioner]: But I'm going to object on what she say.

[The Court]: That's what I'm saying.

[Petitioner]: I'll give her time to bring it up. I'll give her time to bring it up and finish the statement.

[The Court]: That's when you ought to do it.

[Petitioner]: I said I'll do that.

[The Court]: All right.

[Petitioner]: But I'm not more disrespectful than you is, and you know that.

\* \* \* \* \* \*

[The Court]: All right. Let's try it. [¶] Again that's the last warning. Next time you're out. Okay?

[Petitioner]: Well, you pretty much put me out when you took all my defense from me.

[The Court]: Well, you will be physically removed. [¶] Do you understand that?

[Petitioner]: I'm ready to proceed.

[The Court]: Do you understand what I have just said?

[Petitioner]: I said yes. I'm ready.

RT 413:6–415:28. Following this discussion, the jury returned and the prosecutor continued her argument; however, the petitioner continued his pattern of raising unexplained, unmeritorious objections to every sentence the prosecutor said. RT 416:6–22. The trial court gave petitioner one more warning, and then, after excusing the jury, had petitioner removed from the courtroom and placed in the lockup. RT 417:14–418:3.

The California Court of Appeal denied petitioner's claim that his removal from the courtroom violated his due process right to be present, finding petitioner had forfeited that right due to his disruptive conduct. *El,* 102 Cal.App.4th at 1050 n. 1, 126 Cal.Rptr.2d at 90 n. 1. This is so, as detailed above. Petitioner was repeatedly warned he would be removed from the courtroom if he continued his disruptive behavior; nevertheless, he continued to raise meritless objections after practically every statement the prosecutor made in her opening argument. As a result, petitioner was temporarily removed from the courtroom while the prosecutor completed her opening statement. However, petitioner was allowed to return shortly thereafter, and he then gave his closing argument, RT 424:5–460–8:2, and, despite making numerous objections, petitioner

remained through the rebuttal by the prosecutor. RT 460–8:8–460–15:15.

Here, the trial judge found petitioner's behavior was "deliberately obstructionist" and intended to disrupt the court proceedings, RT 413:6–414:1, a finding petitioner has not rebutted. Indeed, petitioner conceded to the California appellate courts that he improperly disrupted the prosecutor's opening argument. *El,* 102 Cal. App.4th at 1049, 126 Cal.Rptr.2d at 90; Return, Exh. C. at 39. As such, petitioner's behavior was calculated to disrupt the courtroom proceedings and transcended his role as his own attorney; therefore, petitioner's temporary removal from the courtroom was not constitutional error. *Allen,* 397 U.S. at 343, 90 S.Ct. at 1060–61; *Badger,* 587 F.2d at 973; *see also United States v. Kizer,* 569 F.2d 504, 506–07 (9th Cir.) (defendant was properly removed from courtroom when, after receiving warning, she continued to speak out, interrupting prosecutor's final argument to jury), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978); *Norde v. Keane,* 294 F.3d 401, 413 (2d Cir.2002) (defendant not denied his right to be present when removed from courtroom after twice interrupting jury selection process with "objections"); *Russ v. Israel,* 531 F.Supp. 490, 493–95 (E.D.Wis.1982) (pro se defendant properly removed from courtroom on two occasions, including during closing arguments when defendant's actions were "highly disruptive and hardly conducive to an orderly trial"). Moreover, even if petitioner's removal from the courtroom was a denial of his due process right to be present, such error was harmless and did not have a substantial and injurious effect on the verdict for the reasons set forth in Part VI below. *See Rushen v. Spain,* 464 U.S. 114, 118–19 n. 2, 104 S.Ct. 453, 455–56 n. 2, 78 L.Ed.2d 267 (1983) (per curiam) ("[T]he right to be present during all critical stages of the proceedings ... [is] subject to harmless error analysis[.]").

Accordingly, the California Supreme Court's denial of petitioner's due process claim was neither contrary to, nor an unreasonable application of, federal law. 28 U.S.C. § 2254.

## VI

■ The Sixth Amendment provides for the right to counsel in all criminal prosecutions, and the concomitant right to waive counsel and for a criminal defendant to represent himself at trial. *Faretta,* 422 U.S. at 832, 95 S.Ct. at 2539–40. Nevertheless, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom." *Id.* at 834 n. 46, 95 S.Ct. at 2541 n. 46. Therefore, "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Id.; see also Martinez v. Court of Appeal of California,* 528 U.S. 152, 161–62, 120 S.Ct. 684, 691, 145 L.Ed.2d 597 (2000)("As the *Faretta* opinion recognized, the right to self-representation is not absolute.... [T]he government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."); *McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984) (pro se defendant must be "able and willing to abide by rules of procedure or courtroom protocol").

■ Here, petitioner waived his right to counsel and chose to represent himself at trial. Supplemental Clerk's Transcript 1–4; RT B22:3–B34:23. However, as discussed above, petitioner was removed from the courtroom while representing himself; thus, he was unrepresented by counsel for a few minutes during the prosecutor's opening argument. Since this Court has determined that petitioner's removal from the courtroom due to his obstreperous con-

duct did not violate his due process right to be present, a fortiorari, the trial court could have properly revoked petitioner's pro se status due to his contumacious behavior. *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46; *Badger,* 587 F.2d at 979. However, in such circumstances, "the [trial] court erred by proceeding in [petitioner's] absence [as pro se] when stand-by counsel was available to defend [petitioner]." *El,* 102 Cal.App.4th at 1050, 126 Cal.Rptr.2d at 90.

Nevertheless, this limited absence of counsel[5] was harmless error, as the California Court of Appeal found:

> [Petitioner] was involved in jury selection, permitted an opening statement and closing argument, did not miss any testimony, and was allowed to cross-examine witnesses. His absence from the courtroom amounted to only five pages' worth of the prosecutor's opening argument. As the denial of his right to counsel was less than total, harmless error analysis applies. [¶] Applying such a test, we find the court's error in proceeding without defense counsel does not require reversal. [Petitioner] missed only the prosecutor's unadorned summary of the elements of the charged offenses and the evidence proving those elements. Focusing on the murder charge, the prosecutor told the jury that [petitioner] had premeditated the shooting because there was a 15–minute delay between his argument with his victim and the shooting. (Interestingly, the jury rejected this argument when it convicted [petitioner] of the lesser included offense of second degree murder.) In support of the possession for sale charge, she told the jury [petitioner] had been arrested with over six grams of cocaine base and that such an amount

was hundreds of times more than that needed for mere personal use. Nothing in the prosecutor's assertions was objectionable and her workmanlike argument scored against [petitioner] no more damage than that already inflicted by the state of the evidence. We can therefore say beyond a reasonable doubt that [petitioner's] temporary absence during the prosecutor's opening argument did not affect the jury's verdicts.

*El,* 102 Cal.App.4th at 1051, 126 Cal. Rptr.2d at 91–92.

 Constitutional errors at trial fall into two categories: (1) trial error, which is an "error which occur[s] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether it[ ] ... was harmless"; and (2) structural error, which is a defect "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," and which is not amenable to harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 307–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991); *United States v. Walters,* 309 F.3d 589, 593 (9th Cir.2002), *pet. for cert. filed,* (May 29, 2003). Structural error applies "only in a 'very limited class of cases[,]'" *Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (citations omitted), such as the complete denial of the right to counsel. *Gideon v. Wainwright,* 372 U.S. 335, 339–45, 83 S.Ct. 792, 793–97, 9 L.Ed.2d 799 (1963). The temporary absence of counsel from a court proceeding is subject to harmless error analysis. *See,* e.g., *Coleman v. Alabama,* 399 U.S. 1, 10–11, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387 (1970) (counsel's absence dur-

---

**5.** The Honorable William F. Fahey presided over petitioner's trial, which commenced on August 2, 2001, with pretrial motions and motions in limine. Jury selection began on August 9, 2001, and the trial continued through August 17, 2001. RT 1–3.

ing preliminary hearing subject to harmless error analysis); *Vines v. United States,* 28 F.3d 1123, 1129 (11th Cir.1994)(counsel's temporary absence during taking of evidence subject to harmless error analysis when no inculpatory evidence was presented against defendant during counsel's absence); *Siverson v. O'Leary,* 764 F.2d 1208, 1217 (7th Cir. 1985) (harmless error analysis applies to counsel's absence during jury deliberations and verdict); *Bryant v. Caldwell,* 484 F.2d 65, 66–67 (5th Cir.1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974)(harmless error analysis applies to counsel's absence during prosecutor's closing argument because prosecutor's statements "were well within the scope of permissible jury argument").

Here, as the California Court of Appeal noted, petitioner's absence during a brief portion of the prosecutor's opening argument to the jury must be viewed in the context of the whole trial, and, in that context, it is subject to harmless error analysis. Under that analysis, habeas corpus relief is granted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 622, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *see also Laboa v. Calderon,* 224 F.3d 972, 977 (9th Cir.2000) (Brecht standard of harmless error analysis applies to all § 2254 cases alleging trial error); *Bains v. Cambra,* 204 F.3d 964, 977–78 (9th Cir.) (same), *cert. denied,* 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000). For the reasons set forth by the California Court of Appeal, including the prosecutor's presentation of only unobjectionable arguments during counsel's absence, the absence of counsel for petitioner from a part of the prosecutor's opening argument did not have a substantial and injurious effect or influence in determining the jury's verdict; thus, it was harmless error.

Accordingly, the California Supreme Court's denial of petitioner's Sixth Amendment claim was neither contrary to, nor an unreasonable application of, federal law. 28 U.S.C. § 2254.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and action with prejudice.

Dated: Sept. 26, 2003.