The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

**Douglas Morgan COHN, Defendant–Appellant.**

No. 05CA0295.

Colorado Court of Appeals,
Div. IV.

March 8, 2007.

Rehearing Denied March 29, 2007.

John W. Suthers, Attorney General, Steve Radetsky, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Viorst Law Offices, P.C., of Counsel, Hochstadt, Straw, Strauss & Silverman, P.C., Anthony Viorst, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Douglas Morgan Cohn, appeals the judgment of conviction entered upon jury verdicts finding him guilty as charged of six felony counts of first degree offering a false instrument for recording. We reverse the judgment and remand for a new trial.

## I. Background

The charges against defendant arose from the following events. Defendant's brother owned property in a covenant controlled community, which was governed by a home-owners association. In 2002, the association filed a covenant violation lien against the brother's property.

Thereafter, defendant filed six mechanic's liens against the property of certain association board members. All six liens claimed that defendant had performed work for the property owner or had provided materials for their property. Five of the liens claimed that the property owner owed defendant $1,000. However, the sixth lien did not include a dollar amount owed. The association subsequently hired an attorney, who had to file civil actions to get the liens extinguished.

## II. Removing a Pro Se Defendant from the Courtroom

Defendant, who represented himself at trial, contends the trial court violated his constitutional right to the assistance of counsel by removing him from the courtroom at various times during the trial without permitting him to appear by means of video conferencing equipment and without counsel being appointed to represent him in his absence. While we conclude defendant's exclusion during some trial testimony was harmless under the facts of this case, we agree the convictions must be reversed because defendant was excluded during portions of jury selection and denied the opportunity to exercise any peremptory challenges.

### A. Defendant's Conduct

In a pretrial suppression hearing, defendant, acting as his own attorney, began his cross-examination of a witness with a statement about the facts of the case. When the court instructed him to ask a question, defendant continued his statement, moving on to claims the proceedings against him were a "political show trial" and the victims should be prosecuted. When the trial court ordered him to sit down, he refused. He said:

> This is the second violent handgun felony crime to attempt to gag me. If you want these kind of show-trial proceedings, why don't you meet me in the backroom and simply throw darts at a dartboard four out of five that land. These are kangaroo court show-trial proceedings. It's backed by illegitimate state violence. If I have a trial . . . in front of a dozen jurors . . . I'm simply going to state my case repeated[ly]. Illegal violent action to gag defendants you [use] . . . to enforce the laws are almost always . . . [against] working class men. If you attempt to gag me, I will not be gagged based on a threat. . . . It is going to take a large amount of state violence to gag me. I don't think you're going to look too good to a jury pool. These proceedings are extortion using state violence to attempt to gag me.

At this point, defendant was removed from the courtroom.

After some discussion with the prosecutor, the trial court decided to have defendant evaluated to determine whether he was competent to stand trial under §§ 16–8–110 and 16–8–111, C.R.S.2006. The court expressed its concern that, "[U]nless [defendant] is bound and gagged [he] will disrupt the proceeding. It's clear that he will. He's already done that . . . as most recently demonstrated here in court."

The examiner determined defendant was competent to proceed, although he diagnosed defendant with a persecutory delusional disorder, a personality disorder with paranoid and schizoid features, and several psychosocial stressors, including chronic mental illness. At the hearing discussing this report, defendant complained the trial court had again engaged in "state handgun violence" against him and asserted the competency evaluation had violated his privacy. He said he was competent to proceed. The court found him competent, set a trial date, and reminded defendant the issue at trial would be the charges against him.

At trial, defendant began his portion of jury selection by stating the charges against him constituted government extortion. He added that the court had engaged in "state violent handgun crime," a term he did not define, in order to gag him by removing him from the courtroom during a pretrial pro-

ceeding and by excluding one of his witnesses from the courtroom on that day. Defendant proceeded to make several lengthy statements about his theory of the case and about how the trial court was violating the Constitution while presiding over the case.

The trial court repeatedly interrupted defendant, ordering him to ask questions of the prospective jurors, not to make speeches or statements. When defendant persisted, the trial court ordered the jury removed and inquired whether defendant would ask the jurors questions and refrain from making speeches. When defendant indicated he intended to continue to make a statement as well as ask questions, the court indicated defendant had "finished jury selection questioning" because he would not follow the court's orders. The court stated the jurors would be returned to the courtroom, and the parties could then exercise their peremptory challenges. As part of these comments, the trial court indicated defendant could be removed from the courtroom if he continued to disobey the court's orders. Defendant replied:

I have a guaranteed right under the U.S. Constitution assuming certain time limits and so on to be present at each and every phase of the court proceedings to state my case within time limits respecting the right of other people to speak.

Upon the jury's return, rather than exercise a peremptory challenge when asked, defendant began to tell the jurors why they had been "excluded from the courtroom" and again referred to the trial court as a "violent handgun criminal." When the trial court inquired whether defendant was "going to exercise a peremptory challenge," defendant continued his comments about the trial court and the victims engaging in extortion. The trial court ordered the sheriff's deputies to remove defendant from the courtroom. Defendant objected, stating, "If they conduct a trial in absentia, this is completely unconstitutional. This is completely illegal."

The trial court, in defendant's absence, explained to the jury why defendant had been removed from the courtroom. Defendant was not present when the prosecutor exercised four peremptory challenges and was not given an opportunity to exercise any peremptory challenges of his own.

Outside of the jury's presence, the trial court informed the prosecutor the court was thinking of making videoconferencing arrangements to allow defendant to watch the proceedings from another location and so be less disruptive. These efforts were unsuccessful.

Defendant was returned to the courtroom, the jury was sworn, and the prosecutor and defendant made opening statements to the jury. Defendant's statement initially focused on his version of the facts of the case, but he eventually returned to the theme of how the trial court had violated his rights in the course of presiding over his case. The court told him to stop talking about this issue four times, and, in the latter two admonitions, added defendant would be removed from the courtroom if he persisted. Defendant then stated the "bulk" of his opening argument was concluded, but he wished to summarize the "violent handgun crimes" the trial court had committed. The trial court ordered the sheriff's deputy to remove defendant from the courtroom. Defendant indicated he did not wish to leave.

After defendant had been removed, the prosecution called its first witness, one of the victims. Defendant was absent for her entire testimony and was not given an opportunity to cross-examine her.

The trial court then brought defendant back into court. Outside of the jury's presence, the trial court told defendant he would not be allowed to disrupt the proceedings, noting defendant had previously excluded himself from the trial by his own actions. Defendant would be allowed to remain in the courtroom and participate in the trial if he followed the procedure the trial court prescribed. However, he would be excluded if he did not follow the court's directions. When the trial court told him he would not be allowed to talk about "state handgun violence" and asked defendant whether he wished to participate in his trial, defendant responded:

I intend to participate every second of every minute of these kangaroo court pro-

ceedings and I insist on my right to do so. To the extent I do not participate for one second or one minute, it is because you ordered me illegally locked out. I fully intend to 100 percent participate.

Defendant was present for the rest of the testimony presented in the case. He cross–examined witnesses, argued for a judgment of acquittal at the end of the prosecution's case, called one defense witness, declined to testify after being advised of his rights, participated in a conference with the trial court and the prosecutor concerning proposed jury instructions, and delivered a short closing argument, much of which was devoted to criticisms of the trial court and the prosecutor.

### B. Right to Be Present in Court

■ A defendant has the right, under the Confrontation Clause of the Sixth Amendment and due process principles, to be present in court during all parts of a trial. *See United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985)(due process); *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Sixth Amendment); *Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979).

■ However, a defendant may forfeit the right to be present by persisting in disruptive conduct after being warned by the court that further similar conduct will result in removal. The right to be present may be restored by the defendant's willingness to behave consistently with courtroom decorum and to abide by the trial court's orders. *Illinois v. Allen, supra.* Other potential forms of dealing with disorderly defendants, such as binding and gagging them, or employing the contempt power, may be unduly prejudicial or unavailing in a particular case. *Illinois v. Allen, supra.* The means chosen to control obstreperous defendants are committed to the trial court's discretion:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations.

*Illinois v. Allen, supra,* 397 U.S. at 343, 90 S.Ct. at 1061.

In Colorado, Crim. P. 43(b)(2) states a defendant is deemed to have waived his right to be present if, "[a]fter being warned by the court that disruptive conduct will cause him to be removed from the courtroom, [the defendant] persists in conduct which is such as to justify in his being excluded from the courtroom." *See also People v. Davis,* 851 P.2d 239, 243 (Colo.App.1993)(defendant may waive his right to be present in court by his misconduct, citing *Illinois v. Allen, supra* ).

Here, defendant demonstrated consistent disregard for the trial court's orders. Despite the court's admonitions to ask questions or to refrain from making speeches, defendant persisted. Defendant was, thus, "disruptive, contumacious, [and] stubbornly defiant." As far as defendant's Sixth Amendment right to be present in court was concerned, we conclude defendant forfeited it.

### C. Right to Counsel

However, as defendant was proceeding as his own attorney, this determination that he waived his right to be present does not end our inquiry. We turn to the question of whether the trial court, by excluding the pro se defendant from the courtroom, denied his right to counsel. We conclude this right was denied.

#### 1. Self–Representation and Standby Counsel

■ The Sixth Amendment guarantees a defendant the right to counsel in a criminal case. The implementation of this basic right is considered necessary for trials to be fair. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *People v. Arguello,* 772 P.2d 87 (Colo.1989). The corollary of this constitutional guarantee is defen-

dants have the right, upon receiving a proper advisement, to waive the assistance of an attorney and represent themselves. Colo. Const. art. II, § 16; *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Arguello, supra.*

■ In certain situations, standby counsel can be appointed to assist a defendant. The role of standby counsel is to assist a pro se defendant, understanding that the pro se defendant "must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle v. Wiggins,* 465 U.S. 168, 174, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984).

■ However, while a defendant does not have a constitutional right to standby counsel, *People v. Arguello, supra,* a trial court may, in its discretion, permit it. Such assistance is normally available only when requested by a defendant. *Downey v. People,* 25 P.3d 1200, 1203 (Colo.2001).

2. Effect of Exclusion on Right to Counsel

We next consider whether defendant's exclusion and lack of standby counsel was constitutional error and whether it was harmless. We conclude that the error was, at least in part, not harmless and requires reversal.

1. a. Constitutional Error

■ Constitutional error occurs when a defendant is deprived of the presence of counsel at critical stages of the proceedings where there is more than a minimal risk that counsel's absence will undermine the defendant's right to a fair trial. *Key v. People,* 865 P.2d 822, 825 (Colo.1994).

The parties do not cite, nor can we find, a published Colorado appellate opinion addressing the issue of excluding an obstreperous pro se defendant from the court during a trial. However, other courts have considered the question.

In *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), the Supreme Court addressed contempt issues arising out of a case in which the defendant represented himself. In a concurring opinion, Chief Justice Burger noted the trial court had been wise to appoint standby counsel, who could step in if the defendant's conduct required his removal from the courtroom. There were important reasons for this appointment:

> In every trial there is more at stake than just the interests of the accused; the integrity of the process warrants a trial judge's exercising his discretion to have counsel participate in the defense even when rejected. A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself. The value of the precaution of having independent counsel, even if unwanted, is underscored by situations where the accused is removed from the courtroom under *Illinois v. Allen.*

*Mayberry v. Pennsylvania, supra,* 400 U.S. at 468, 91 S.Ct. at 506.

This analysis prefigured an important qualification of the right to self-representation set forth in *Faretta v. California, supra,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541:

> [T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *See Illinois v. Allen,* [supra].... [The court] may—even over objection by the accused—appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.

*See United States v. Pina,* 844 F.2d 1, 15 (1st Cir.1988) ("Removal of a defendant from the courtroom is more difficult when the defendant is acting pro se. We thus encourage a trial judge to employ his or her wisdom to appoint standby counsel whenever a defendant refuses or discharges counsel."); *see also United States v. Mack,* 362 F.3d 597 (9th Cir.2004)(excluding pro se defendant from the courtroom during proceedings was reversible error); *Badger v. Cardwell,* 587 F.2d 968, 977–78 (9th Cir.1978)(exclusion of

pro se defendant from courtroom for misconduct violated due process and was not harmless and, thus, was reversible error; error may not have been reversible had court appointed standby counsel to take defendant's place); *Clark v. Perez*, 450 F.Supp.2d 396, 422 (S.D.N.Y.2006)("[I]f a [pro se] defendant is absent from the courtroom due to an inability or unwillingness to abide by the rules of procedure and courtroom protocol, standby counsel must be appointed."); *People v. El*, 102 Cal.App.4th 1047, 1050, 126 Cal. Rptr.2d 88, 91 (2002) ("the court erred by proceeding in appellant's absence when standby counsel was available to defend appellant," but error was harmless) (habeas corpus relief was denied for substantially the same reasons in *El v. Lamarque*, 293 F.Supp.2d 1107 (C.D.Cal.2003)); *People v. Carroll*, 140 Cal.App.3d 135, 141–43, 189 Cal. Rptr. 327, 331–32 (1983) (excluding pro se defendant from the courtroom was reversible error; court could have found defendant unable to represent himself and appointed standby counsel); *Jones v. State*, 449 So.2d 253, 257 (Fla.1984)(when court faced with an "obstreperous defendant who might well attempt to disrupt and obstruct the trial proceedings," it is prudent to appoint standby counsel, even over defendant's objection, "to represent defendant in the event it became necessary ... [to remove] him from the courtroom"); *Saunders v. State*, 721 S.W.2d 359, 363–64 (Tex.App.1985)(constitutional error to remove defendant from the courtroom for his misconduct during jury selection; removal was at least a temporary termination of his right of self–representation and standby counsel should have been directed to conduct the examination). *But see United States v. Williams*, 431 F.3d 1115 (8th Cir.2005)(affirming conviction of pro se defendant removed several times from the courtroom for being disruptive; court noted standby counsel represented defendant while he was gone and defendant allowed to watch proceedings on closed–circuit television); *United States v. Jennings*, 855 F.Supp. 1427, 1445–46 (M.D.Pa.1994)(pro se defendant who was removed from the courtroom after he said he would continue disruptive conduct in presence of prospective jurors, but was able to continue to listen to proceedings through loud speakers and transmit messages to the court, was barred from the proceedings by his own conduct, not by the court, and his conviction was affirmed), *aff'd*, 61 F.3d 897 (3d Cir.1995)(unpublished table decision).

The American Bar Association Standards for Criminal Justice also address this issue. "If a defendant who is permitted to proceed without the assistance of counsel engages in conduct which is so disruptive that the trial cannot proceed in an orderly manner, the court should, after appropriate warnings, revoke the permission and require representation by counsel." ABA Standards for Criminal Justice 63.9 (1986).

 We cannot conclude that, under the facts of this case, defendant expressly waived his right to counsel. Defendant objected to being removed from the courtroom and clearly stated his desire to be present, adding he had the right to be "present at each and every phase of the court proceedings to state my case."

Nor can we find defendant, by his conduct, implicitly waived his right to have any counsel present at all, whether himself or someone else. Rather, as the cases above indicate, the trial court could have found defendant had waived his right to proceed pro se and appointed counsel to represent defendant's interests during the time he was excluded from the courtroom.

Based upon *Key v. People, supra*, and the authority from other jurisdictions, we conclude the exclusion of defendant from the courtroom due to his misconduct, while acting as his own counsel, was constitutional error. Here, defendant was absent from what was undeniably a critical stage of the proceedings, the exercise of peremptory challenges. Because the trial court was unable to make videoconferencing arrangements, defendant was not aware of what occurred while he was absent. He was denied the opportunity to exercise his own peremptory challenges. Thus, there was also more than minimal risk that his absence undermined his right to a fair trial.

### b. Harmless Error

■ However, to determine whether defendant's conviction should be reversed, we must determine whether the denial of his right to counsel resulting from his exclusion from the courtroom is subject to harmless error analysis. We conclude harmless error analysis is appropriate here and defendant's exclusion during jury selection cannot be considered harmless.

■ Preliminarily, we determine defendant asserted his Sixth Amendment right to counsel before he was removed from the courtroom during jury selection by stating he had a right to "state his case." Thus, harmless error analysis is proper here because defendant preserved this error for review by raising a contemporaneous objection. *See People v. Miller*, 113 P.3d 743, 749 (Colo. 2005).

■ While the absence of counsel at a critical stage of the proceedings can result in the deprivation of a constitutional right, it is amenable to harmless error analysis. *Key v. People, supra*, 865 P.2d at 826–27. Other courts have employed harmless error principles when a pro se defendant has been excluded from the courtroom because of misconduct. *El v. Lamarque, supra; People v. El, supra; Saunders v. State, supra.* But see *People v. Carroll, supra*, 140 Cal.App.3d at 141, 189 Cal.Rptr. at 331 (exclusion of pro se defendant from the courtroom was "fundamental error requiring reversal without regard to prejudice"). "[A] constitutional error is harmless when the 'evidence properly received against a defendant is so overwhelming' that such error was harmless beyond a reasonable doubt." *Key v. People, supra*, 865 P.2d at 827 (quoting *Bartley v. People*, 817 P.2d 1029, 1034 (Colo.1991)). The error is not harmless if, based upon a review of the entire record, there is a reasonable probability the defendant was prejudiced. *Key v. People, supra.*

■ There is no constitutional right to peremptory challenges; their source is state law. Section 16–10–104, C.R.S.2006. However, a defendant's due process rights are violated if he is not afforded the peremptory challenges state law provides. *People v. Lefebre*, 5 P.3d 295 (Colo.2000). It is constitutional error if a trial court (1) improperly grants the prosecution's challenge for cause, (2) improperly denies a defendant's challenge for cause, or (3) awards the prosecution an extra peremptory challenge, as each of these decisions gives the prosecution an unfair advantage in "shap[ing] the composition of the jury." *People v. Lefebre, supra*, 5 P.3d at 304. This constitutional error is viewed as inherently prejudicial to the defendant, *People v. Lefebre, supra*, 5 P.3d at 308, and, therefore, cannot be considered harmless. *Carrillo v. People*, 974 P.2d 478, 486–87 (Colo.1999).

Here, there is no claim the trial court improperly denied or granted any challenges for cause, and the prosecution was not awarded any extra peremptory challenges. However, the result of the constitutional error of excluding defendant from the courtroom and denying him the exercise of any peremptory challenges was effectively to give the prosecution an unfair advantage in shaping the composition of the jury that tried defendant's case. We conclude that excluding defendant from the portion of the proceedings concerning the exercise of peremptory challenges was inherently prejudicial and cannot be considered harmless. Therefore, defendant's convictions must be reversed.

By reaching the conclusion that defendant's convictions must be reversed, we should not be read as condoning defendant's obviously improper behavior or as signaling to trial courts they do not have broad discretion to deal with disruptive defendants. We vigorously agree with the Supreme Court that a defendant should not be allowed "to profit from his own wrong." *Illinois v. Allen, supra*, 397 U.S. at 345, 90 S.Ct. at 1062.

Here, the trial court was faced with trying circumstances and demonstrated significant patience and forbearance with defendant. Further, the trial court did not have the benefit of any Colorado authority for guidance in deciding what to do when a pro se defendant has to be removed from the courtroom.

However, this decision now points out trial courts have options available they can use to avoid constitutional error, while simultaneously preventing defendants from profiting from their own wrongdoing. A defendant's Sixth Amendment right to counsel will be preserved by appointing standby counsel to be ready to step in should the trial court find it necessary (1) to make a finding that the defendant, by his conduct, has waived the right to self–representation, and (2) to exclude the defendant from the courtroom when disruptive behavior occurs. This is especially true when, as in this case, a trial court knows well before trial a defendant has psychological problems and the court can predict the defendant will be disruptive at trial.

Further, there are alternatives to appointing standby counsel. For example, arrangements can be made to place obstreperous defendants in locations outside the courtroom where they have access to videoconferencing equipment or similar technology, thus providing them with the means to observe and participate, while reducing their disruptive influence on the trial. *See United States v. Jennings, supra.*

In light of this determination, we need not address the effect on the proceedings of excluding defendant from the courtroom during the testimony of the prosecution's first witness.

### III. Intent to Defraud

█ Because it would be dispositive if correct, we next address defendant's contention that the evidence is insufficient to sustain his convictions because there is no evidence establishing he intended to defraud the board members against whom he filed mechanic's liens. We conclude the evidence of defendant's intent to defraud the board members was clearly sufficient to justify submitting the case to the jury.

A person commits the crime of offering a false instrument for recording in the first degree if, knowing the written instrument relating to or affecting real or personal property or directly relating to contractual relationships contains a material false statement or material false information, and with intent to defraud, he presents or offers it to a public office or a public employee, with the knowledge or belief it will be registered, filed, or recorded or become part of the records of that public office or public employee. Section 18–5–114(1), C.R.S.2006.

### A. First Five Counts

Defendant argues there is no evidence establishing he intended to defraud the board members because there was no evidence he intended "to deceive" them. "Quite the opposite," he argues, "[I] openly admitted to the named victims, their counsel, and the Douglas County Sheriff's Department, that the liens were spurious."

Defendant provides numerous citations to the record in support of his argument. Those portions of the record establish defendant admitted (1) he had filed mechanic's liens against the six board members; (2) he had never performed any work for, or supplied any materials to, those board members; (3) no money was owed to him by any of the board members; (4) the mechanic's liens he filed were "spurious"; (5) they were filed as a "counterstrike" to persuade the association to release its lien against his brother's property and not file any further liens; and (6) defendant was "pleased to see that [his] counterstrike liens ha[d] cost [the association] almost $6k in legal fees so far."

However, this evidence does not, contrary to defendant's assertion, establish his innocence. Rather, it tends to establish his guilt.

Mechanic's liens attach to lands and buildings erected upon them. Section 38–22–103, C.R.S.2006. They assume priority "as of the time of the commencement of the work" over liens "subsequently intervening" or previously created, but not yet recorded, of which the lienor did not have actual notice. Section 38–22–106(1), C.R.S.2006.

Proper recording of a lien provides constructive notice that interests exist affecting title. Section 38–35–109, C.R.S.2006; *Collins v. Scott*, 943 P.2d 20 (Colo.App.1996). A purchaser of property takes title subject to all rights that would have been revealed by a reasonable inquiry into the status of the title.

*Cohen v. Thomas & Son Transfer Line, Inc.,* 196 Colo. 386, 586 P.2d 39 (1978).

The filing of a mechanic's lien clouds title to the property. *See People v. Forgey,* 770 P.2d 781 (Colo.1989); *Bankers Trust Co. v. El Paso Pre–Cast Co.,* 192 Colo. 468, 474, 560 P.2d 457, 462 (1977). Thus, a lien in the chain of title can interfere with or prevent the owner from selling the property or obtaining a loan employing the property as security. Indeed, two victims presented trial testimony that the liens defendant filed adversely affected the sale or financing of their property.

A defendant's intent to defraud may be inferred from his conduct and from the circumstances of the case. *People v. Norman,* 703 P.2d 1261 (Colo.1985). As indicated above, the crime of offering a false instrument for recording is completed when the document containing the materially false statement is presented to the public office with intent to defraud and with knowledge or belief it will be recorded.

Each of these liens stated the indebtedness was $1,000. The jury was free to infer that, despite defendant's statements to the contrary, at the time he filed the liens, he intended to obtain $1,000 from each of the victims, particularly in light of the history of the conflict between the victims and defendant and the harm defendant claimed the victims had visited upon his brother and him. Defendant also conceded he hoped, by filing these liens, to force the victims to release the association's liens on his brother's property. Thus, there was evidence to support the inference defendant sought to gain two benefits from the victims to which he was not entitled by filing documents containing materially false statements.

It does not matter that the victims were not actually defrauded. Defendant's admission he knew the liens were "spurious" was sufficient to support an inference he possessed an intent to defraud. *See People v. Cunefare,* 102 P.3d 302, 307 n. 4 (Colo.2004) (it is not necessary, to prove crime of forgery, to show person receiving forged instrument was actually defrauded; fact finder may infer intent to defraud where the defendant passed an instrument he knew to be false). We conclude the evidence presented at trial was sufficient to submit the case to the jury because there was proof from which the jury could properly infer defendant acted with the intent to defraud the victims. *See People v. Caldwell,* 43 P.3d 663, 672 (Colo. App.2001).

## B. Sixth Count

■■ Defendant also argues that, even if the evidence is sufficient to establish that he intended "to deceive" the board members, as the jury was instructed, it was insufficient, at least with respect to the sixth lien, to establish he intended to persuade that board member to "assume, create, transfer, alter or terminate" a property right, because the lien he filed against that board member's property did not list an amount of indebtedness.

However, as indicated in the preceding section, whether defendant included an amount of indebtedness in the lien is not necessary to determine whether he intended to persuade the board member to terminate a property right. What is relevant is that the board member, as a representative of the association, had a legal right to file liens against property in that community, and defendant admitted he intended to persuade this board member to terminate the lien filed against his brother's property by filing a lien containing materially false information.

## IV. Excluding Defendant's Brother from the Courtroom

■■ Because it may arise on retrial, we resolve defendant's further contention that the trial court committed reversible error by refusing to exempt his brother from a sequestration order. We disagree.

■■ A trial court has discretion under CRE 615(3) to exempt from a sequestration order any person whose presence is shown by a party to be essential to the presentation of that party's case. We will not overturn a court's decision regarding witness sequestration absent an abuse of discretion. *People v. Melendez,* 102 P.3d 315, 319 (Colo.2004); *People v. Graham,* 53 P.3d 658, 663 (Colo. App.2001).

Here, defendant requested his brother be permitted to remain in the courtroom as "a general witness for court proceedings." He informed the court:

> A general witness for court proceedings is somebody who would be present for each stage of the court proceedings as a witness to what I say and do and as a witness, for example, to state violence that you might order against me or someone on my side to attempt to gag us. Illegal state violence as an outside witness to that and someone who could communicate that, for example, to the local or national media.
>
> . . . .
>
> I do need an independent witness in case of acts of illegal violence are directed by the Court, for example, on your orders [Judge] against me or members of my side to witness these events and provide an impartial accounting to the media should this become necessary.

Later, defendant reiterated his intention to have his brother "act as the observer and be able to communicate results to the press including illegal state and handgun violence which you may well order against me or the witness."

The trial court refused to exempt the brother from its sequestration order, explaining: "If you want ... to have some third party sit in here who's not a witness to observe, that's fine[,] but not a witness."

We perceive no abuse of discretion in the court's refusal to exempt defendant's brother from its sequestration order. The trial court did not exclude the general public, making it clear to defendant he could have a person who was not a witness present to monitor the proceedings. Under those circumstances, enforcing the sequestration order did not interfere with defendant's ability to present a defense.

■ We do not address defendant's additional argument, made for the first time on appeal, that his brother's presence was essential to the presentation of his defense because his brother "had intimate knowledge of the facts that gave rise to this case, and because [defendant] could not effectively function in his [brother's] absence." *See*

*People v. Fontes,* 89 P.3d 484, 487 (Colo.App.2003)(declining to address argument made for the first time on appeal).

The judgment is reversed, and the case is remanded for a new trial.

Judge CASEBOLT and Judge HAWTHORNE concur.