25CA1528 Peo in Interest of EQB 01-29-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1528
Mesa County District Court No. 24JV13
Honorable JenniLynn E. Lawrence, Judge

The People of the State of Colorado,

Appellee,

In the Interest of E.Q.B., a Child,

and Concerning M.T.,

Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE GRAHAM*
Román, C.J., and Taubman*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

Todd M. Starr, County Attorney, John Rhoads, Assistant County Attorney, Grand Junction, Colorado for Appellee

Josie L. Burt, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1   In this dependency and neglect proceeding, M.T. (mother) appeals the judgment terminating her parent-child legal relationship with E.Q.B. (the child). We affirm.

## I.   Background

¶ 2   In February 2024, the Mesa County Department of Human Services received a referral that mother was at a hospital emergency room with her then-one-year-old child, and the hospital staff had concerns that mother was either under the influence of drugs or experiencing psychosis. A caseworker met with mother at the hospital and noticed that she had dilated pupils, spoke erratically, and was easily perturbed. Consequently, the Department requested emergency protective custody of the child. The juvenile court granted the request, and the Department placed the child in foster care.

¶ 3   The Department filed a petition in dependency and neglect alleging concerns about mother's substance use and mental health. After a two-day jury trial, the juvenile court adjudicated the child dependent or neglected. Shortly thereafter, the court adopted a treatment plan that required mother to (1) attend family time; (2) complete a psychological evaluation and follow its

1

recommendations; (3) complete a co-occurring substance abuse and mental health assessment and engage in the assessment's recommended treatment; (4) follow the probation department's requirements of her criminal cases and refrain from engaging in further criminal activity; (5) obtain stable housing and employment; and (6) communicate and cooperate with the Department.

¶ 4    The Department later moved to terminate mother's parental rights.  After a two-day hearing, the juvenile court granted the termination motion.

## II.    Sequestration

¶ 5    Mother contends that the juvenile court abused its discretion by denying her request to exempt her advisory witness from the sequestration order.  We are not persuaded.

### A.    Applicable Law and Standard of Review

¶ 6    The Colorado Rules of Evidence provide that, at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses.  CRE 615. Sequestration orders prevent witnesses from tailoring their testimony to that of other witnesses and aid the court in the detection of false testimony.  *People v. Melendez*, 102 P.3d 315, 319

(Colo. 2004). Even so, this rule does not authorize exclusion of a person whose presence is shown by a party to be essential to the presentation of that party's case. *See* CRE 615; *People v. Cohn*, 160 P.3d 336, 346 (Colo. App. 2007).

¶ 7 We review a juvenile court's determination regarding sequestration for an abuse of discretion. *Cohn*, 160 P.3d at 346. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *People in Interest of T.M.S.*, 2019 COA 136, ¶ 43.

## B. Analysis

¶ 8 At the termination hearing, mother asked the juvenile court to allow her to have an advisory witness — a consultant whom mother had hired to review the case records and conduct a reasonable efforts evaluation of the Department. Mother also asked the court to exempt that witness from the sequestration order. In support of her request, she asserted that, as an expert witness, the consultant had "a right to hear the testimony that is brought up in this case in order to . . . further advise and inform her opinion" because the other witnesses' testimony would provide the consultant with a "better understanding" of the case.

¶ 9     The juvenile court denied mother's request, finding that if it exempted the consultant from the sequestration order, it "might be hard . . . to decipher what [was] based on previously . . . disclosed information, and what [was] based on information heard in this room today." The court stated that it was "err[ing] on the side of caution" to make sure that the hearing was "as fair as possible."

¶ 10    We conclude that the juvenile court did not abuse its discretion by declining to exempt the consultant from the sequestration order for two reasons.

¶ 11    First, the juvenile court gave mother the opportunity to show that exempting the consultant from the sequestration order was essential to her case, but mother did not do so. Rather, she argued that the consultant had the "right" to hear the other testimony to "advise and inform" her expert opinion. But she did not point to any legal authority, and we are not aware of any, that allows an expert witness to hear other witnesses' testimony as a matter of right. Allowing an expert witness to hear other testimony solely to "advise and inform" their opinion is contrary to the purpose of sequestration orders. *See Melendez*, 102 P.3d at 319 (sequestration

orders are meant to prevent witnesses from tailoring their testimony to that of other witnesses).

¶ 12    Second, although we acknowledge that when an expert witness offers testimony based on previously prepared reports it is unlikely to be affected by the testimony of others, *see Martin v. Porak*, 638 P.2d 853, 855 (Colo. App. 1981), that does not mean that a court may not sequester that expert witness.  Here, the juvenile court stated it intended to preserve the fairness of the hearing by preventing confusion and ensuring that the consultant did not change her testimony based on other witness testimony.  Thus, we cannot say that its ruling was manifestly arbitrary, unreasonable, or unfair; therefore, it was not an abuse of discretion.  *See T.M.S.*, ¶ 43.

¶ 13    Nonetheless, mother fails to articulate how she was prejudiced by the court's decision because she provides no detail about how the consultant's insights would have changed her defense or altered the outcome of the hearing.  Thus, although we do not perceive an abuse of discretion, even so, any error was harmless.  *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties."); *People in Interest of*

*R.D.*, 2012 COA 35, ¶ 25  (an error affects a substantial right only if it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself).

### III.    Expert Witness

¶ 14    Next, mother contends that the juvenile court abused its discretion by denying her request to designate the consultant as an expert in the "differential response model, reasonable efforts, and Volume 7 mandates."[1]  We discern no error.

### A.    Applicable Law and Standard of Review

¶ 15    The admissibility of expert testimony is governed by CRE 702 and CRE 403.  *People in Interest of A.F.*, 2025 COA 76, ¶ 11.  In determining if expert testimony is admissible, a court must consider whether: (1) the scientific, technical, or specialized principles underlying the testimony are reasonably reliable; (2) the expert is qualified to opine on the matter; (3) the expert testimony will be helpful to the jury; and (4) the probative value of the evidence is

---

[1] Practitioners often refer to the Colorado Department of Human Services' administrative rules and regulations as "Volume 7."  The rules and regulations are codified in the Colorado Code of Regulations.  *See* 12 Code Colo. Regs. 2509-1 to -9.

substantially outweighed by the danger of unfair prejudice. *Id.* at ¶¶ 21-25.

¶ 16    The decision to admit or exclude expert testimony lies within a juvenile court's discretion, and thus, we will not disturb it absent an abuse of that discretion. *People in Interest of M.W.*, 140 P.3d 231, 233 (Colo. App. 2006).

## B.    Analysis

¶ 17    At the termination hearing, mother sought to designate the consultant as an expert in (1) social work with emphasis in child protection; (2) "the differential response model" for child welfare cases; (3) reasonable efforts; and (4) Volume 7 mandates. Neither the Department nor the GAL objected to allowing the consultant to testify as an expert in social work with an emphasis in child welfare. But the GAL objected to allowing the witness to testify as an expert in the remaining designations.

¶ 18    The juvenile court granted mother's request to designate the consultant as an expert in social work with an emphasis in child protection but denied the request to designate her as an expert in the other areas. We discern no abuse of discretion in the juvenile court's exclusion of this expert testimony.

¶ 19    First, the juvenile court found that although the consultant had done "a lot of work" in the area of differential response, it did not have "enough background information regarding the differential response work in terms of what it is and how [the consultant is] specially qualified in that work."  In other words, it properly considered the underlying principles of the "differential response model" and whether the consultant was qualified to testify on the matter.  *See A.F.*, ¶¶ 21-23.  In doing so, it necessarily weighed the consultant's testimony about her experience with the differential response model.  *See People in Interest of E.H.*, 837 P.2d 284, 289 (Colo. App. 1992) (the sufficiency of the foundational evidence to establish the qualifications and knowledge of a witness to entitle her to express an opinion is a question for the trial court's determination).  And we cannot reweigh the evidence.  *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.

¶ 20    Next, the juvenile court noted that while the consultant's testimony about the Department's efforts to rehabilitate mother could be helpful, it did not believe that the consultant's opinion on whether the Department met its reasonable efforts obligation was necessary because that was an issue for the court to decide.  The

8

court properly considered whether the consultant's opinion would help it determine whether the Department made reasonable efforts but found that it would not. *See A.F.*, ¶ 24. That "common sense inquiry" was within the court's discretion. *Id.* (quoting *People v. Cooper*, 2021 CO 69, ¶ 48).

¶ 21 Last, the court found that while the consultant could testify about her experience applying Volume 7 mandates as a caseworker or supervisor, she was not qualified to opine about Volume 7 itself, because she did not have the requisite legal training or specialized knowledge to qualify as an expert on that "area of law." Again, the determination that the consultant was not qualified to opine on Volume 7 mandates was based on the court's weighing the consultant's testimony about her qualifications, and we cannot reweigh the evidence. *See id.* at ¶ 21; *K.L.W.*, ¶ 62.

¶ 22 Moreover, mother fails to articulate what additional testimony would have been presented if the consultant had been allowed to opine on the "differential response model, reasonable efforts, and Volume 7 mandates" or explain how that additional testimony would have changed the outcome of the hearing. Thus, although

we do not perceive an abuse of discretion, nevertheless, any error was harmless.  *See* C.A.R. 35(c); *R.D.*, ¶ 25.

## IV.  Reasonable Accommodations

¶ 23  Last, mother contends that the juvenile court erred by finding that her treatment plan was appropriate and that the Department made reasonable efforts to rehabilitate her because the Department failed to provide reasonable accommodations for her bipolar disorder, as required by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213.  We are not persuaded.

## A.  Applicable Law

¶ 24  A court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.  § 19-3-604(1)(c), C.R.S. 2025.  As relevant here, to determine whether a parent is unfit, a juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family.  *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S.

10

2025; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).

¶ 25    The ADA requires the juvenile court and the department of human services to account for and make reasonable accommodations for a parent's disability when devising a treatment plan and providing rehabilitative services. *People in Interest of S.K.*, 2019 COA 36, ¶ 34. But the ADA does not restrict the juvenile court's authority to terminate parental rights when the parent, even on the basis of a disability, is unable to meet a child's needs. *People in Interest of C.Z.*, 2015 COA 87, ¶ 17.

¶ 26    Whether a parent is a qualified individual with a disability under the ADA requires a case-by-case determination. *Id.* at ¶ 21. Before a department can be required to provide reasonable accommodations under the ADA, it must know that the individual is disabled, either because that disability is obvious or because someone has informed it of the disability. *Id.* at ¶ 22. Thus, while a department must provide appropriate screening and assessments of a parent, the parent is responsible for disclosing information regarding their disability. *Id.* at ¶ 21. And a parent should also identify any treatment plan modifications that they believe are

11

necessary. *Id.* To that end, "waiting until the termination hearing to raise the ADA issue is problematic because when the department and the juvenile court don't know that the parent has a disability, the department can't provide, and the court can't order the department to provide, reasonable accommodations to rehabilitate the parent during the case." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 17.

¶ 27    Whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. Thus, we review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *Id.*

### B.    Analysis

¶ 28    In its order terminating mother's parental rights, the juvenile court found that "no evidence was offered" to show that the Department knew about mother's alleged disability or that the alleged disability significantly interfered with mother's major life activities. It went on to find that mother's treatment plan was appropriate because it "specifically addressed each of the concerns" that brought the family to the Department's attention. It also found

that the Department made reasonable efforts to rehabilitate mother and reunite her with the child but that, largely due to mother's unwillingness to engage with the Department, those efforts were unsuccessful.

¶ 29    Although it is typically the parent's responsibility to disclose information regarding their disability, *see S.K.*, ¶ 21, neither mother nor her legal team notified the Department or the court that they believed mother had a qualifying disability under the ADA until the termination hearing. However, mother argues that the Department should have provided reasonable accommodations because it was "on notice" of her "obvious" disability throughout the case.

¶ 30    Although the Department reported significant concerns about mother's erratic behaviors and her mental health, we disagree that those concerns provided it with constructive knowledge of an "obvious" qualifying disability under the ADA because mother's erratic behaviors and mental health symptoms, on their own, did not establish that mother had a "physical or mental impairment that substantially limit[ed] one or more major life activities." *See* 42 U.S.C. § 12102(1)(A). And, as noted by the juvenile court, mother did not present any evidence, either before or during the

termination hearing, to show that her mental health disorder interfered with her major life activities.

¶ 31    Nonetheless, even if we assume that mother's mental health disorder somehow qualified as an obvious disability under the ADA, she fails to identify any specific accommodations that the Department should have or could have added to her treatment plan or provided to her that would have precluded termination of her parental rights.  And, as it relates to mother's mental health, the record supports the court's findings that mother's treatment plan was appropriate and that the Department made reasonable efforts to rehabilitate her.

¶ 32    Specifically, mother's treatment plan included two objectives designed to address her mental health issues — one that required her to complete a co-occurring disorders assessment and follow its treatment recommendations and a second that required her to complete a psychological evaluation and follow its treatment recommendations.  Those objectives were related to the Department's concerns about mother's mental health when the treatment plan was adopted.  *See People in Interest of A.N-B.*, 2019 COA 46, ¶¶ 25-26 (the appropriateness of a treatment plan must be

assessed in light of the facts existing at the time of the plan's approval). And before the termination hearing, mother never raised the ADA or requested accommodations. *See S.Z.S.*, ¶ 16 (if a parent knows or has reason to know she has an ADA-cognizable disability, the issue should be raised before the court adopts a treatment plan so the department can include requested accommodations in the treatment plan and provide services accommodating the disability throughout the case).

¶ 33    As for the Department's efforts to rehabilitate mother, the caseworker testified that she could not refer mother to mental health services for nearly a year because mother did not sign the required releases of information. Nonetheless, when mother signed the required releases, the caseworker referred mother for a psychological evaluation.[2] By the time of termination, mother had

---

[2] Although it is unclear whether the caseworker referred mother for a co-occurring disorders assessment the caseworker testified that mother completed an evaluation at the Women's Resource Center, where mother went after she was released from jail in early 2025. Mother testified that completing the Women's Resource Center's impatient program under the terms of her pending criminal case. Thus, it appears that the Department did not need to make a referral for a co-occurring disorders assessment because the referral would have been duplicative and unnecessary. *See* § 19-3-

15

completed the co-occurring disorders assessment, which revealed that she had bipolar disorder. However, the caseworker testified that neither the diagnosis nor the co-occurring disorders assessment provided sufficient information to determine which accommodations were necessary. Rather, the caseworker testified that the psychological evaluation would provide specific recommendations in terms of treatment and accommodations for mother's mental health issues. But mother had not completed the psychological evaluation in the year-and-a-half since her treatment plan had been adopted.

¶ 34    Based on the foregoing, we discern no error in the court's findings that mother's treatment plan was appropriate and that the Department made reasonable efforts to rehabilitate her and reunite her with the child.

### V.    Disposition

¶ 35    The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE TAUBMAN concur.

---

208(2)(b), (d), C.R.S. 2025 (a department must provide services only if they are determined to be necessary and appropriate).