23CA1088 Peo v Hale 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1088
Adams County District Court No. 22CR339
Honorable Jeffrey Smith, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Colby J. Hale,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TOW
Lipinsky and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Colby J. Hale, Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Colby J. Hale — who identifies as Colby Hale-El — appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault, driving while ability impaired (DWAI), and careless driving.  (We will refer to him as Hale-El, though for records consistency we will retain in the caption the name under which he was charged and convicted and under which he is listed in the Department of Corrections; we mean no disrespect by doing so.)  Hale-El contends that the trial court erred by allowing the prosecution to present inadmissible evidence and by violating his right to be present at trial.  We disagree and, therefore, affirm.

## I.    Evidentiary Issue

¶ 2    Hale-El first argues that the trial court erroneously allowed the prosecution to admit a recording from a police body camera that depicted his conduct and demeanor at a hospital hours after the incident (body camera recording).  We perceive no reversible error.

## A.    Background

¶ 3    Around 3:30 a.m. one day in January 2022, firefighters responded to a report of a vehicle that was stopped in the grassy median of the roadway.  The firefighters described the vehicle's

driver — identified as Hale-El — as agitated, aggressive, uncooperative, and verbally abusive. They took measures to prevent Hale-El from leaving the median and walking across the highway through traffic.

¶ 4    At some point, Hale-El tripped, and a firefighter reached out to stop him from falling. Hale-El struck the firefighter in the face. The other firefighters briefly subdued Hale-El until he could be turned over to police custody. Hale-El was taken to a hospital to be evaluated before being transported to jail.

¶ 5    The prosecution charged Hale-El with second degree assault on a firefighter, driving under the influence (DUI), and careless driving.[1] Before trial, the prosecution moved to introduce evidence "relating to [Hale-El's] conduct while being treated by the paramedics, being transported to the hospital, while at the hospital, and while being transported from the hospital to the jail on the date of the offense." This evidence included the body camera recording. The prosecutor argued that such evidence was intrinsic to the

_____

[1] The prosecution also charged Hale-El with violating the compulsory insurance statute but dismissed that charge before trial.

crimes charged because it was probative of Hale-El's mental state for the assault charge and his intoxication for the DUI charge. The prosecutor asserted that he was also prepared to establish the evidence's admissibility as extrinsic evidence.

¶ 6    At a motions hearing, Hale-El objected to the admission of the body camera recording, arguing essentially that it did not show what the People contended, it was not true, and that he should have been given a field sobriety test instead of transported to the hospital; he did not base his objection on the rules of evidence. The court granted the prosecution's motion to admit the evidence, finding that it was intrinsic and relevant, and that its probative value outweighed any undue prejudice.

¶ 7    At trial, the prosecution presented the body camera recording to the jury. During closing argument, the prosecutor addressed the direct evidence that proved Hale-El's mental state for the assault charge and his intoxication. The prosecutor then argued that the body camera recording could be considered as circumstantial evidence of Hale-El's intoxication and his intent when he struck the firefighter. The jury convicted Hale-El of second degree assault. It

acquitted him of DUI but found him guilty of the lesser offense of DWAI, as well as careless driving.

### B.     Legal Authority and Standard of Review

¶ 8     Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.  All relevant evidence is admissible, except as otherwise provided by constitution, statute, or rule.  CRE 402; *Rojas v. People*, 2022 CO 8, ¶ 25.  Among other things, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  CRE 403.

¶ 9     Additionally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character."  CRE 404(b)(1).  The application of CRE 404(b) depends, in part, on whether the proffered evidence is intrinsic or extrinsic to the charged crimes.  *Rojas*, ¶¶ 42, 44, 52.

¶ 10     Evidence of a person's acts "that directly prove the charged offense or . . . that occur contemporaneously with the charged

offense and facilitate the commission of it" is intrinsic to the charged offenses and exempt from the requirements of CRE 404(b). *Rojas*, ¶ 52. Otherwise, such evidence is extrinsic and is admissible only as provided by CRE 404(b) and the four-part test set forth in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). *Rojas*, ¶¶ 27, 52.

¶ 11 "Trial courts have broad discretion in determining the admissibility of evidence based on its relevance, its probative value, and its prejudicial impact." *People v. Elmarr*, 2015 CO 53, ¶ 20. Thus, we review a court's evidentiary rulings for an abuse of discretion. *Rojas*, ¶ 16. A court abuses its discretion when its ruling is based on an erroneous view of the law or is manifestly arbitrary, unreasonable, or unfair. *Elmarr*, ¶ 20.

¶ 12 We review for plain error when a defendant did not object to the admission of evidence at trial. *People v. Penn*, 2016 CO 32, ¶ 28. Plain error is error that is both "obvious and substantial." *Hoggard v. People*, 2020 CO 54, ¶ 13. An error is substantial and warrants reversal under plain error review "if an appellate court, after reviewing the trial record in its entirety, can say with fair assurance that the error 'so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the

5

judgment of conviction.'" *People v. Crabtree*, 2024 CO 40M, ¶ 43 (quoting *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987)).

## C.    Analysis

¶ 13    Hale-El argues that the trial court erred by finding that the body camera recording was intrinsic and not subject to CRE 404(b). Alternatively, he argues that even if the evidence was intrinsic, it was inadmissible under CRE 401 and CRE 403. We need not decide whether admitting the body camera recording was error, because even if it were, we conclude that it does not require reversal. *See Martinez v. People*, 2017 CO 36, ¶ 25.

¶ 14    First, we are not convinced that any error in admitting the recording was obvious. "An error is obvious if it is 'so clear-cut' that 'a trial judge should be able to avoid it without benefit of objection.'" *People v. Ramcharan*, 2024 COA 110, ¶ 63 (quoting *Crabtree*, ¶ 42). The prosecution's position that the evidence was intrinsic or, in the alternative, was admissible as extrinsic evidence had at least arguable merit such that it cannot be said the evidence should clearly have been precluded. *See People v. Robinson*, 2022 COA 124, ¶¶ 30, 33 (holding that the challenged testimony "was not obviously improper because it arguably fell within an exception to"

6

the rule that precluded such testimony). Notably, Hale-El only argues that the court did not make the admissibility findings for extrinsic evidence pursuant to *Spoto* and CRE 404(b). He does not state why the recording would not have been admissible had the court done so.

¶ 15    Second, the strength of the following unobjected-to testimony belies the conclusion that the admission of the body camera recording undermined the fundamental fairness of the trial or cast serious doubt on the reliability of the judgment of conviction. *See Martinez,* ¶ 38 ("[T]he strength of the prosecution's case against [the defendant] mitigate[d] any doubt about the reliability of the jury's verdicts as a result of" the asserted unpreserved court error).

¶ 16    Regarding Hale-El's mental state, the victim testified that Hale-El told him "to get the fuck out of there" when the victim attempted to check Hale-El for injuries after the car accident. After exiting the vehicle, Hale-El "slam[med] his driver's door, began to curse at [the firefighters], [and] began to tell [them they were] racist." The victim stated that, when the firefighters tried to prevent Hale-El from leaving the median and walking into traffic, he told them "don't fucking touch me. Please get the fuck out of here."

Importantly, the victim testified that, when he attempted to catch Hale-El after he tripped, Hale-El "turned around . . . and said, 'Don't you fucking touch me'" and "[t]hen he basically swung and hit me in the left side of the head."

¶ 17    Another firefighter testified that, when Hale-El was told he could not walk into traffic, Hale-El "didn't like that answer; so he . . . str[uck] [the victim] in the head, knocking his helmet to the side." A police deputy testified that, when taking Hale-El into custody, he was belligerent, yelling, cursing, and uncooperative. And a state trooper stated that, while transporting Hale-El to the hospital and while at the hospital, Hale-El was uncooperative, agitated, and belligerent; yelled, cursed, and kicked the gurney; and tried to assault the medical staff.

¶ 18    This overwhelming evidence of Hale-El's mental state during and shortly after his interaction with the first responders more than justifies an inference as to his intent when he hit the victim. *See People v. Robinson*, 226 P.3d 1145, 1154 (Colo. App. 2009) ("[A] defendant's mental state may be inferred from [their] conduct and other evidence, including the circumstances surrounding the commission of the crime.").

¶ 19     Regarding Hale-El's intoxication, the victim testified that Hale-El appeared to have an "unsteady gait" and that his speech appeared to be slurred.  The deputy recalled the smell of alcohol coming from Hale-El.  And the trooper testified that Hale-El was in the back of a sheriff's deputy's vehicle when the trooper arrived on the scene and that, when the vehicle's door was opened, he detected the "strong odor of unknown alcoholic beverage coming from inside."

¶ 20     This evidence was more than sufficient to warrant the jury's finding that Hale-El was intoxicated.  *See People v. Mersman*, 148 P.3d 199, 201-02 (Colo. App. 2006) (indicia of intoxication observed at the time the police contacted the defendant was sufficient to support his DUI conviction).

¶ 21     Moreover, before deliberations, the jurors were instructed that they must (1) follow the rules of law; (2) apply the rules to reach their verdict; and (3) "not be influenced by sympathy, bias or prejudice in reaching [their] decision."  Absent any contrary indication in the record — and we discern none — we presume the jurors followed these instructions.  *See People v. Carter*, 2015 COA 24M-2, ¶ 59.

¶ 22    Finally, we are persuaded that the jury's acquittal on the greater DUI charge and conviction on the lesser offense of DWAI demonstrate that, notwithstanding the assertedly improper admission of the body camera recording, the jury properly weighed and evaluated the admissible evidence and the charges. *See People v. Snelling*, 2022 COA 116M, ¶ 40 ("[E]ven if we assume that the jurors heard [the purportedly inadmissible evidence], any error was harmless; the jury's split verdict indicates that the audio did not substantially influence the verdict or affect the fairness of the trial."). Indeed, during closing argument, the prosecutor admonished the jury not to consider DWAI unless it "first concluded that [Hale-El] is not guilty of DUI."

¶ 23    For the foregoing reasons, we conclude that any error in the admission of the body camera recording did not substantially influence the verdict or impair the fairness of the trial. *See People v. Gaffney*, 769 P.2d 1081, 1088 (Colo. 1989).

## II.    Right to Be Present

¶ 24    Hale-El next argues that the trial court violated his right to be present during his jury trial when it impermissibly removed him from the courtroom on the second day of trial. We disagree.

10

## A. Legal Authority and Standard of Review

¶ 25   The Sixth Amendment to the United States Constitution guarantees defendants the right to be present during every stage of a trial. *See Illinois v. Allen*, 397 U.S. 337, 338 (1970); *People v. Janis*, 2018 CO 89, ¶ 16. This right, however, is not absolute. *Janis*, ¶ 17. As relevant here,

> a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Allen*, 397 U.S. at 343; *see also Janis*, ¶ 17 ("A defendant may waive her right to be present . . . through her conduct."); *People v. Cohn*, 160 P.3d 336, 341 (Colo. App. 2007) ("[A] defendant may forfeit the right to be present by persisting in disruptive conduct after being warned by the court that further similar conduct will result in removal."). "Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen*, 397 U.S. at 343.

11

¶ 26     The United States Supreme Court has identified "three constitutionally permissible ways" for a trial court to handle an "obstreperous defendant" — namely, "(1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." *Id.* at 343-44.  Whether to remove a disruptive defendant from trial is within the court's discretion.  *Id.* at 343; *Cohn,* 160 P.3d at 341.

¶ 27     Moreover, in Colorado, Crim. P. 43(a) provides, in part, that "[t]he defendant shall be present . . . at every stage of the trial."  *See Janis,* ¶ 16 n.2.  However, similar to the language in *Allen,* Crim. P. 43(b)(2) provides that

> [t]he trial court in its discretion may complete the trial, and the defendant shall be considered to have waived his right to be present, whenever a defendant, initially present[,] . . . [a]fter being warned by the court that disruptive conduct will cause him to be removed from the courtroom, persists in conduct which is such as to justify his being excluded from the courtroom.

¶ 28     We review de novo whether a court violated a defendant's constitutional or Rule 43 right to be present.  *Janis,* ¶ 14; *People v. Hernandez,* 2019 COA 111, ¶ 12.

12

¶ 29    Hale-El represented himself at trial, with the assistance of advisory counsel.  Throughout the first day of trial, Hale-El interrupted the court proceedings, repeatedly challenged the court's jurisdiction, and used profane language numerous times both in front of and outside the presence of the jury.  The court informed Hale-El multiple times that, if he continued to interrupt the proceedings, he would be held in contempt or removed from the courtroom.  At one point, while raising yet another challenge to the court's jurisdiction, Hale-El said, "I don't care.  I'm speaking my mind.  You don't like it, kick me out.  I don't care.  I care about the jurisdiction.  You don't have any, period."

¶ 30    On the morning of the second day of trial, Hale-El told the court that an officer had purportedly assaulted him while transporting him to the courtroom.  The court advised Hale-El to report the incident and then commenced that day's proceedings.

¶ 31    While discussing preliminary matters before bringing in the jury, Hale-El interrupted the proceeding multiple times.  The court advised Hale-El that, if he continued to disrupt the proceeding and failed to follow the court's orders, he would be held in contempt and

would be watching the trial outside the courtroom and without the ability to cross-examine the witnesses. Hale-El replied, "I think I got what I need. I really don't care anymore. I don't."

¶ 32     During the preliminary discussions, the prosecutor addressed discovery issues that Hale-El had previously raised and sought to provide him with physical copies of the documents. Hale-El threw the documents on the floor. The court advised Hale-El that it would "not tolerate outbursts today."

¶ 33     When Hale-El persisted in interrupting the discussions, the court ordered him to stop and placed him on notice that he would be held in contempt. After additional disruptions, the court found Hale-El in contempt because he "violated [the court's] orders . . . because [he] continue[d] to interrupt." The court warned him that the next sanction would be to remove him from the courtroom. Hale-El responded, "I might as fucking well. Shit, you are not even letting me make any God damn evidence in here, not let me say shit. I might as fucking well." After more profanity-laced interruptions, the court ordered Hale-El removed from the courtroom:

> THE COURT: Mr. Hale-El, we're done. Stop it.

THE DEFENDANT: Are we done?

THE COURT: I find you in contempt.

THE DEFENDANT: We should be fucking done. You are not letting me talk.

THE COURT: You're out of here.

THE DEFENDANT: -- introduce evidence.

THE COURT: You're out of here.

THE DEFENDANT: I don't give a fuck.

THE COURT: The Court -- I'm going to make this record before you leave. Hold him --

THE [DEFENDANT]: Fuck you.

THE COURT: Get him set up where he can watch. Keep him in here right now if you don't mind.

The Court is going to make the following record. The Court has already found Mr. Hale-El in contempt for refusing to follow these Court's orders concerning his decorum in the courtroom.

THE DEFENDANT: You don't even decorum. You don't have jurisdiction.

THE COURT: He has been advised numerous times by --

THE DEFENDANT: You cannot adjudicate. You can't adjudicate me. There is no decorum.

THE COURT: The record speaks for itself on --

15

THE DEFENDANT: You don't have jurisdiction, period.

THE COURT: -- Mr. Hale-El's contemptuous --

THE DEFENDANT: You don't have jurisdiction.

THE COURT: -- conduct.

THE DEFENDANT: Prove it.

THE COURT: The Court finds --

THE DEFENDANT: You have to prove jurisdiction. You cannot proceed in any legal matter --

THE COURT: All right. He is out of here.

THE DEFENDANT: -- unless you have jurisdiction.

THE COURT: I'll be down there with a laptop.

¶ 34 After Hale-El was removed from the courtroom, the court

made an additional record:

Mr. Hale-El has now been excused from the courtroom.

I will finish making my record.

The record in this case over the last year speaks for itself concerning Mr. Hale-El's continued interruptions in court. He was advised this morning as he was numerous times in the last week about how this trial was going to be conducted.

16

The Court finds that contempt sanctions would not cure his conduct and his disruptive behavior in this case. Therefore, the Court is having him removed. He will be placed in a room downstairs below us, a jury room. The Court is making available to him the ability to view this trial by WebEx.

I will have a deputy down there so that if Mr. Hale-El decides that he wants to continue to participate in this trial, he can let the deputy know. They'll let me know. I will then pause us wherever we are during the case to allow Mr. Hale-El to be brought back into this courtroom.

¶ 35 Advisory counsel made an additional record that she "imagine[d] that th[e] [purported assault by the officer] was incredibly stressful for Mr. Hale-El, and it may be in part why he is not able to maintain court decorum this morning." The court acknowledged the reported assault but found that "he has been explained the rules many times over, and he knows how he can get back into this courtroom if he wants to."

¶ 36 Courthouse deputies later made a record that, during the remainder of the second day of trial, they periodically asked Hale-El if he wanted to virtually watch the proceeding or return to the courtroom. Hale-El declined each offer. The court advised the deputies to continue to ask Hale-El if he wanted to participate

17

because "[a]nytime he wants to come back, he is welcome back in the courtroom if he'll follow the Court's rules."

¶ 37     At the end of the second day of trial, the court issued a written order requiring Hale-El to be present in the courtroom for the next trial day and rescinding the order authorizing the use of force to secure his presence. Hale-El refused transport to the courtroom for the third trial day, however.

## C.     Analysis

¶ 38     Based on this record, we conclude that, through his conduct, Hale-El lost or validly waived his right to be present. *See* Crim. P. 43(b)(2); *Janis*, ¶ 17; *see also Allen*, 397 U.S. at 339-40, 343, 345-46 (The defendant lost his constitutional right to be present when he "argue[d] with the judge in a most abusive and disrespectful manner"; "he tore the file which his attorney had and threw the papers on the floor"; "[h]e continued to talk back to the judge" and make "more abusive remarks" despite being warned that he would be removed from the courtroom; and he "responded to one of the judge's questions with vile and abusive language.").

¶ 39     The record makes clear that Hale-El's conduct was disruptive to the courtroom proceedings and disrespectful to the court. *See*

*Allen,* 397 U.S. at 343 ("It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated."). And when the court's warnings and contempt citation failed to secure Hale-El's willingness to conduct himself appropriately, the court permissibly removed him from the courtroom. *See id.* at 345-47.

¶ 40    In short, the trial court did not abuse its discretion. To the contrary, the court's approach to Hale-El's incorrigible behavior was exemplary. The court exercised admirable patience and did everything in its power to allow Hale-El to bring his behavior into line and avoid removal from the courtroom, as well as to return to it later. Hale-El's absence from the proceedings resulted solely from his steadfast refusal to behave appropriately. His claim that he somehow did not waive or otherwise lose his right to be present is meritless.

## III.    Disposition

¶ 41    The judgment of conviction is affirmed.

JUDGE LIPINSKY and JUDGE TAUBMAN concur.